[Filed January 11, 1886.]

## J. H. FISK *v.* D. V. B. HENARIE ET AL.

CONTRACT—REAL-ESTATE BROKER—COMMISSIONS.—Where a broker is employed to negotiate a sale of real property, his undertaking is to bring the proper buyer and seller together, and if the former is able and willing to purchase upon the terms, the broker is empowered to negotiate a sale of the property. If the seller then refuses to complete the sale, he will be liable to the amount of the commissions.

PLEADING—CONDITION PRECEDENT.—Under the Code, in pleading the performance of conditions precedent, it is sufficient to allege generally that the party duly performed all the conditions on his part.

SAME—How CONSTRUED AFTER VERDICT.—After issue joined and a verdict rendered, the only question the court will consider as to the pleadings is whether they are sufficient to uphold the verdict rendered thereon.

CONTRACT—ACCEPTANCE OF TERMS BY VENDOR—BROKER'S COMMISSION.—Where an owner of an interest in lands, who is also authorized to act for the other owners, writes a letter to another requesting him to make a sale of the lands at a specified price, and the latter, without formally accepting the offer, effects a sale upon terms which are accepted by the

vendors, the agent thereby becomes entitled to the commission. It is not necessary that such a letter should contain apt words of contract. Any language from which the terms could reasonably be implied would be sufficient.

EVIDENCE—AMBIGUOUS CONTRACT—LETTERS.—Where various letters have passed between the parties concerning a sale of lands, which leave the intention of the parties in doubt, evidence of the previous understanding of the parties in relation to the subject-matter is competent to explain their meaning. And such letters should be construed in the light of all the surrounding circumstances.

SAME—PAROL CONTRACT—STATUTE OF FRAUDS.—Evidence of a parol contract for the sale of lands is admissible where it is proposed to follow it with proof of a subsequent written recognition of the agreement by the party to be charged.

MULTNOMAH COUNTY.    Plaintiff appeals.    Reversed, and new trial ordered.

*George H. Williams* and *Wallace Mount,* for Appellant.

There is a distinction between cases of a contract made by written correspondence and cases where the question is whether or not there is a note or memorandum of a contract already existing in parol sufficient to take it out of the statute of frauds.   In the former case, both parties should sign letters assenting to the same thing; in the latter, it is only necessary that a writing specifying the essentials of the agreement be signed by the party to be charged. (*Peabody* v. *Speyers,* 56 N. Y. 236; *Gale* v. *Nixon,* 6 Cow. 444; *Norton* v. *The American Ring Co.,* 1 Fed. Rep. 684; *Beckwith* v. *Talbot,* 95 U. S. 289; *Wheeler* v. *New Brunswick R. R. Co.,* 115 Id. 29.   When the correspondence between the parties is of doubtful import, and both parties have acted upon a certain construction of an ambiguous document, that construction, if in itself admissible, will be adopted by the court. (*Foster* v. *Goldschmidt,* 21 Fed. Rep. 70.)   A broker has earned his commissions when he produces to his principal a party with whom the owner is satisfied, and who contracts for the purchase at an acceptable price. (*Glentworth* v.

*Luther*, 21 Barb. 147; *Phelon* v. *Gardner*, 43 Cal. 310; *Middleton* v. *Findla*, 25 Id. 76; *Knapp* v. *Wallace*, 41 N. Y. 477.)

*James K. Kelly* and *Arthur L. Frazer*, for Respondent.

A contract cannot bind the party proposing it by letter, and indeed, there is no contract until the acceptance of the offer by the party receiving it is actually or constructively communicated to the party making the offer. (1 Parsons on Contracts, 483; Roberts on Frauds, 109; *Lincoln* v. *Erie Preserving Co.*, 132 Mass. 129; *May* v. *Ward*, 134 Id. 127; *Moulton* v. *Kershaw*, 59 Wis. 316.) An offer of a bargain, by one person to another, imposes no obligation upon the former, unless it is accepted by the latter, according to the terms on which the offer was made. Any qualification of or departure from these terms invalidates the offer, unless agreed to by the party who made it. (*Eliason* v. *Henshaw*, 4 Wheat. 225; *Carr* v. *Duval*, 14 Pet. 77; *Hutcheson* v. *Blakeman*, 3 Met. (Ky.) 80; *Frith* v. *Lawrence*, 1 Paige, 434.) Written communications cannot be added to by parol evidence of additional facts so as to make a contract not expressed therein. (*Moulton* v. *Kershaw*, 59 Wis. 316; 3 Parsons on Contracts, 14.) The complaint does not allege that the plaintiff procured a purchaser for the property of defendants, but that he procured Leigh, Payne, & Co., who *agreed to purchase*. This is not sufficient. He must find a purchaser *ready and able and willing to complete the purchase* on the terms agreed on, before he is entitled to his commission. (*McGavock* v. *Woodlief*, 20 How. 221, 227; *Sibbald* v. *Bethlehem Iron Co.*, 83 N. Y. 383; 1 Parsons on Contracts, 99; *Finnerty* v. *Fritz*, 5 Col. 174; *Pratt* v. *Hotchkiss*, 10 Ill. App. 603.)

THAYER, J. The appellant commenced an action in the court below against the respondents to recover the

sum of $60,000, commissions alleged to have been earned in procuring a purchaser of lands owned by respondents, situated in the counties of Wasco, Grant, and Baker, in this state, consisting of a tract of 600,000 acres, and known as " The Dalles Military Road Company's Land Grant." He alleged in his complaint in said action that on and prior to October 1, 1881, D. V. B. Henarie, Eleanor Martin, James V. Martin, Genevieve Martin, Peter D. Martin, Walter S. Martin, Andrew D. Martin, Thomas S. Martin, Edward Martin, S. A. Francis, and M. Wilcox, wife of J. D. Wilcox, were the owners of said tract of land, and that in December, 1880, they, said owners, made a contract with him that if he would procure a purchaser for said lands at the rate of one dollar per acre, he should receive as a compensation therefor the sum of ten per cent of said purchase price; that he did procure Leigh, Payne, & Co., of Chicago, Illinois, as purchasers, who were accepted as such, and that a contract was entered into October 1, 1881, in which it was agreed that said Leigh, Payne, & Co. would take the said lands and pay therefor the sum of $600,000; that thereafter, the respondents becoming the owners of said lands, the said agreement of October 1, 1881, was modified on the nineteenth day of September, 1882, by the execution of a new agreement between the said Leigh, Payne, & Co. and the respondents, whereby the said company agreed to pay for the said lands the said sum of $615,000 on terms satisfactory to the respondents; that for reasons unknown to the appellant the sale was not consummated, whereupon the appellant, about January or February, 1883, procured one Robert Bell, banker, of the city of Portland, Oregon, to make respondents a proposition to purchase said lands upon the terms and conditions specified in said agreement with said Leigh, Payne, & Co., and as an inducement to said respondents to accept him, said Bell, as such

purchaser, he offered to pay said respondents $10,000 of the purchase price cash down, upon the execution of an agreement with him by them for the sale of said property, which the appellant alleged were more favorable terms than those contained in the former modified agreement; that the said Bell was then and ever since had been able, and was then ready and willing, to purchase said property upon the terms proposed by him; that the respondents Wilcox, Edward Martin, and Thomas S. Martin, who lived in Oregon, were willing to accept the offer of said Bell to purchase said property, but that said Henarie, Donohue, and Eleanor Martin, who resided in San Francisco, declined it for no other reason, as appellant alleged upon his information and belief, than because they were induced to believe by outside parties that they could obtain a higher price for said land; that he was fully authorized to contract for the sale of said property on the terms specified in said agreement with said Leigh, Payne, & Co., and under such authority he procured for such owners a purchaser therefor in the said Robert Bell, in addition to the procurement of said Leigh, Payne, & Co., as such purchasers; and that he performed on his part all things necessary and proper to enable said respondents to sell said property upon the terms and conditions which they prescribed for its sale, and that said respondents wrongfully and willfully, and without any good reason or just cause, refused to sell said property after appellant had procured purchasers therefor as aforesaid, and wholly neglected and refused to perform their said contract with appellant, and still refuse so to do, and that the sale of said property was not completed, on account of the refusal and neglect of respondents to perform upon their part.

The respondents in their answer denied that any such contract as alleged was ever made by them, or either of

them; that, on the contrary, some of the respondents made a parol agreement with the appellant that if he would procure a purchaser for said lands at the price of $600,000, who would pay for the same cash, or part in cash and part in satisfactory securities, he should be entitled to receive a *pro rata* portion of said cash, or of said cash and securities, at the time when the same were received, of ten per cent of the amount or security so received, as a commission, payable exclusively out of the same, provided that such purchaser would pay, at the time of agreeing to purchase the property, such sum of money, as a prepayment to bind the bargain, as would be satisfactory for that purpose to said owners.    Admitted that said Leigh, Payne, & Co., on the fourth day of October, 1881, entered into an agreement with some of the respondents (but not with said Donohue, who then had no interest in the said lands), whereby the said Leigh, Payne, & Co. would purchase and pay for said property $600,000, portions of which were to be paid at stated times until the whole amount of $600,000 was paid, when the property should be conveyed to them; that Leigh, Payne, & Co. failed to pay any part of the $600,000, or perform any of the conditions of their agreement;    that the said modified contract was entered into between respondents, including Peter Donohue and said Leigh, Payne, & Co., wherein the latter company agreed to pay respondents said $615,000, at certain times mentioned in the contract, which they wholly failed to do; that the appellant induced the respondents to enter into the contract, knowing at the time that said Leigh, Payne, & Co. were unable to purchase and pay for the property; that appellant himself was interested as a partner with said Leigh, Payne, & Co. in said purchase, and was to share in the profits that might be made by said firm, in case they could sell or dispose of the said property, at a

OREG. XIII.—11

profit, to any other person or persons; and that the said
parol contract was made in the state of California, where
the respondents then and ever since have resided; and
that by the law of said state a parol agreement in such
case was void unless the same, or some note or memo-
randum thereof, be in writing. The appellant replied
to the new matter of defense set forth in answer, deny-
ing all the material allegations thereof. The issues so
made came on for trial before said court and a jury duly
impaneled. The appellant, on said trial, offered in evi-
dence and read to the jury portions of a deposition of
said D. V. B. Henarie, which had theretofore been taken
in the case upon the part of the respondents. Among
other interrogatories and answers of said witness read to
the jury were the following:

"*Interrogatory 5.* Did you, in connection with any
other persons, ever make an agreement by which you
employed the plaintiff, James H. Fisk, to act as your
agent or broker to sell lands? If you did so employ
him, when was that contract made? Where was it
made? And who all were parties to it? *Answer.* I
never did, either by myself or in connection with any
other persons, employ plaintiff. I merely gave to him
the price at which I and other owners of said lands were
willing to sell them, with the promise and offer that, if
he could effect the sale of them at the price of one dollar
an acre, out of the moneys received from said sale we
would pay him ten per cent commission. But no money
was to be paid him except out of the proceeds of the sale
effected by him. It was understood that this proposi-
tion, which plaintiff accepted, was in no way to interfere
with our selling the lands to other parties, if we could,
without his help, in which case he was to receive no
commission. If that proposition and its acceptance
constituted a contract or agreement, it was made in San

Francisco, California, in or about the month of October, 1880, and plaintiff was employed then as agent or broker to make the sale of the lands whenever he could, on the conditions I have mentioned. The parties to it were the owners of the land—myself and the Edward Martin estate, represented by Mrs. Eleanor Martin, administratrix, on one part, and plaintiff on the other part. No other contract or agreement with plaintiff, or proposition and acceptance, was ever made by us for the parties plaintiff and defendant."

The said witness further answered:

"The proposition I have stated, which was an offer as before mentioned, was by parol. It was not reduced to writing. There was no written contract."

The appellant then offered himself as a witness in the action, and was asked by his counsel—after having stated that he lived in Portland, was an assayer by profession, and in the years 1880–83 was engaged in negotiating sales of land; knew the respondents in the fall of 1880, and at that time talked with them in San Francisco, California, about the lands in question—the following question: "State what conversation you had, and what, if any, agreement was made between you and the respondents, in relation to your procuring a purchaser for the lands described in the complaint, and what, if any, commissions you were to have therefor." This question was objected to by the respondents' counsel as immaterial and incompetent, and the objection sustained by the court, and an exception saved to the ruling. The appellant's counsel then offered in evidence an extensive correspondence which took place between the appellant and the said D. V. B. Henarie, concerning the sale of the said lands, which counsel claimed was evidence of a contract for the employment of the appellant to procure a purchaser of the lands at the price of one dollar an acre,

and of an agreement upon the part of the owners to pay him a commission of ten per cent of the purchase price therefor. The correspondence was by letter, and extended through a period of several months, during which time the appellant was East, and the said Henarie in San Francisco. The offer of proof embraced some sixteen letters written by the two parties mutually, and transmitted through the mails, and it was accompanied by an offer to show that the said Henarie was authorized by the other owners of the land to act in their behalf in the matter. The circuit court, after inspecting the letters, concluded that they did not prove the contract claimed by the appellant's counsel, and upon objection to their admission by the respondents' counsel, excluded them, to which ruling the appellant's counsel saved an exception.

This presents the main question in the case for our consideration. The respondents' counsel contended upon the argument that the complaint did not contain a cause of action; that it was not alleged therein that said Leigh, Payne, & Co. were ready and willing to purchase, or that it was owing to the fault of the respondents that the sale was not consummated, but averred that, for reasons not known to him, it was not consummated. The respondents' counsel, I think, state, in their brief, the correct rule of law upon the subject: "That the person procured by the broker to purchase the property must be able to purchase it, and ready and willing to do so on the terms proposed by the sellers. And if such person is produced, and the seller refuses to complete the contract, then, and not until then, has the broker earned his commissions." The contract of a broker in such a case is to bring the proper buyer and seller together, and if the former is able, ready, and willing to purchase upon the terms, the broker is empowered to negotiate a sale of the property;

but if the seller capriciously refuses to complete the sale, he will be liable to the amount of the commissions. This question, however, would hardly arise upon the pleadings. The Code, I think, dispenses with the necessity of stating the performance of conditions precedent in a contract with that nicety that was required in special pleading at common law. It is no longer necessary to state the fact showing such performance, but it may be stated generally that the party duly performed all the conditions on his part; and if such allegations be controverted, the party pleading shall be bound to establish on the trial the facts showing such performance. (Civ. Code, sec. 86.) I am not prepared, either, to concede that the complaint would not be sufficient even under the common-law rule. It contains a good deal of matter which, in a shapely and methodical form, would probably have answered more stringent requirements than those in force at the present time. Besides, the court ought not to examine a pleading so critically, where it has been answered, as it would be expected to where the alleged defects were sought to be taken advantage of by demurrer or motion to make more definite or certain. The only question the court would really have the right to consider, as the case stands, is whether the complaint is sufficient to uphold a verdict recovered thereon. If it were absolutely defective so that a judgment for the appellant would be arrested on motion, then the respondents might justly claim that, if the exclusion of the evidence offered regarding the introduction of the letters were erroneous, the appellant would have no right to complain, as he would not have been entitled to a judgment in any event. But that view cannot possibly be maintained. The complaint would certainly be good after verdict, and that is as far as we have a right to consider matter before us. It is necessary, therefore, to

recur to the former question. I should readily conclude from the facts shown by the record that Mr. Henarie and his co-tenants of the lands in question were, at the outset of their affairs with the appellant, desirous of selling them, more particularly Mr. Henarie himself. The appellant, prior to his visit to the East in 1880, had an interview with the latter, and ascertained that the lands were for sale at a dollar an acre, and that ten per cent commissions would be allowed to any person who would procure a purchaser of them for that price. It was a sort of standing offer upon the part of the owners to any one who would effect such a sale, like the offer of a reward in many cases. I do not think that the appellant, while at San Francisco upon the occasion referred to in the evidence, made any contract with Mr. Henarie in regard to procuring a purchaser of the lands. I think all that was done in the premises substantially is stated in Henarie's answer to the fifth interrogatory of his deposition.

I have copied herein appellant's first letter from New London, Connecticut, bearing date November 28, 1880, which shows plainly that he did not regard himself as under any obligation to attempt to effect such sale. He says in that letter that he has been prospecting some in regard to the land; that he finds money very plenty, and many anxious to take hold of something of that kind, etc.; that Mr. Tilton said " that he learned that the interest of some of the heirs had been disposed of," which might complicate matters in disposing of it. But he says: " If you can get it into shape and allow me to handle it on a commission, I am confident I could dispose of it to your entire satisfaction as well as to myself." This shows that the appellant did not, at that time, consider that he had entered into any contract with the owners as suggested. I have no doubt, however, but that it was then understood between the parties that if

appellant, or any other person, would procure a pur-
chaser at the price mentioned, he would be entitled to
the commission named, and would doubtless have been
paid it unhesitatingly. That was the *status* of the affair
evidently when the New London letter was written by
appellant to Henarie. In reply to that letter, Mr. Hena-
rie wrote the following:

SAN FRANCISCO, December 7, 1880.

MR. J. H. FISK—*Dear Sir:* Your favor of November
28th has been received and contents noticed, and in an-
swer, I will say: 1. That none of the heirs have sold out.
There has been none sold since Mr. Martin's death. There
are 600,000 acres to be sold in a lump. There is a very
influential party East that now have the land for sale,
and they feel very confident of effecting a sale; but they
have it for no stated time, consequently we have liberty
to accept the first offer made at the price set—one dollar
per acre, ten per cent off, commission. We should be
very glad if you could make the sale. The lands are so
very low and so well known I think you might make a
quick sale of them.

We are prepared at short notice to give a good title,
without having an administrator appointed in Oregon.
There are no debts in Oregon, hence the heirs can sign
and the minors by guardian, under direction of the pro-
bate court. The whole proceedings can be gone through
with in a short time. I have not offered my individual
quarter-interest separately as yet, thinking perhaps it
might hinder the sale of the whole. I regret I did not
meet with Mr. Tilton when he passed through the city.
Should like to have had a talk with him. I think the
railroad parties could make more out of these lands than
any other party.

I am anxious to have the lands sold in order to close

up our interests in Oregon, and for other private reasons, and if you can do it, I shall be happy.

Yours truly,

[Signed]                  D. V. B. HENARIE.

This letter contains a decided request that the appellant make the sale, and a promise of ten per cent commission. The respondent's counsel seek to avoid the effect of this letter, upon the plea that it was a mere proposition, and that the appellant did not accept it; and they liken it to a case of a sale of personal property where the negotiation is conducted by letter, in which case an offer must be shown to have been made by the vendor, and an acceptance by the purchaser. But there is no similitude between the two classes of cases. The one is a contract of sale, transferring from the vendor to the purchaser a right to the thing proposed to be sold. The right rests wholly in contract, and is created by it. The affair only becomes a contract when there has been an offer to sell and an acceptance of the offer, and the latter must be made promptly. In the other case the offer is by one party, that if the other will do some act beneficial to the former, for so doing a certain compensation shall be paid. The acceptance in such a case is evidenced by the doing the thing requested. It is analogous to a case where A is owner of a field, and he tells B that if he will plow it, he will pay B at the rate of five dollars an acre for his labor, and B makes no reply, but goes on and does the plowing. No one would contend that B would not be entitled to the compensation after he had completed the job, especially if A knew he was laboring to perform it. It is evident from the subsequent correspondence between the parties herein that the appellant was engaged in trying to sell these lands with the approval of Henarie, and that he expected to receive the commission promised in case he succeeded.

It is true that he exhibited a want of faith in his being able to effect a sale of the lands at the price of one dollar an acre, and was constantly suggesting the necessity of disposing of them at a less rate, and it appears from one of the letters from Henarie to appellant—the one of February 25, 1881—that the former was willing to take less. He says in that letter:

"When I received your dispatch, I prevailed with some difficulty on Mrs. Martin to allow me to offer the lands to you for $450,000, in consideration of a quick sale. .You have that offer now, and I should think you could make sale of them at that price without much difficulty. . . . . Now, as to my own individual quarter-interest in the lands. If you can get me a cash offer of the amount I intimated to you when here that I might accept, I will close it out, as I am anxious to get my partnership matters closed as soon as possible and retire. I think this last proposition is worth your serious consideration. I shall be pleased to hear from you again soon in regard to this whole matter, and if anything turns up of interest in regard to the lands here, I will write you."

In the appellant's letter of July 13, 1881, he says:

"Leigh is very anxious to learn soon whether you and Mrs. Martin will agree to the contract. He has had several Englishmen talking with me about it, and as' soon as it is settled he will have them all writing to their friends in Europe to invest in it. . . . . I regard this Englishman's offer much better than any other, and full as quick, if not quicker, payment; and I think the quicker we get them to work on it the quicker we will get the money. They will have a good deal to do to put the thing in shape, and so have I, and I want to go back to Frisco as soon as I can after this is fixed up."

In Mr. Henarie's letter of July 21, 1881, which evi-

dently was an answer to that of the appellant's last referred to, he says:

"We have about concluded to accept Leigh, Payne, & Co.'s offer, and will sign such contract as will suit us, and we think will suit Mr. Leigh."

It would seem that the affair between the owners of the lands and Leigh, Payne, & Co., in which the appellant was taking an active part, resulted in their entering into the contract of October, 1881, which was subsequently, and on the nineteenth day of September, 1882, modified by the execution of a new agreement between, the respondents and the said Leigh, Payne, & Co. The appellant alleges that the execution of said agreement effected a sale of the lands; that he procured said Leigh, Payne, & Co. to make the purchase, and thereby earned and became entitled to the commission. The respondents' counsel claim that said transaction did not amount to a sale, and that the appellant has not earned the commission. This court cannot pass upon that question, and ought not to be expected to, on this appeal; and I do not see how the court below could have done so. After the appellant failed, under the ruling of that court, to prove the contract alleged in the complaint, the case was virtually terminated. It would have been idle for him to attempt to prove that he had performed a contract until he had shown that he had made it. The question of the admissibility of the said letters is the only one this court need to consider, or could intelligently pass upon. The court below seemed to have labored under an impression that.such a contract required formality; but I cannot see that it does, any more than any engagement of one person to do some act for another, except that under the California statute it is required to be in writing, and signed by the party to be charged, in order to be valid. A writing, however, in

such a case, may be informal.   If the letter from Henarie to the appellant of December 7, 1880, amounted to a request to the latter to procure a purchaser of the lands, and Henarie was authorized to act for the other owners, and the appellant acted upon it, and did procure a purchaser satisfactory to the owners, and they concluded a sale of the lands to such purchaser, the owners were legally obligated to pay the commission.   The writing in such case need not be signed by both parties, nor contain any terms further than that, if the broker will procure such purchaser, he will be allowed a stated commission.   Neither is it necessary that it contain apt words of contract.

Any language from which the terms indicated could reasonably be implied would be sufficient.   No one, it seems to me, can read the letters sought to be introduced in evidence herein without concluding that the appellant was engaged to effect a sale of the lands, and that he was to have a ten per cent commission if made upon terms acceptable to the owners.   It was a business correspondence, in which many schemes were suggested for disposing of the lands, and very little said directly as to the appellant's employment in the matter; but if it can be reasonably inferred therefrom that he was desired to procure a purchaser, and should have the rate of commission alleged, it was just as binding a contract as though it were written upon parchment in the most artistic and approved style.   The substance, and not the form, will be looked at in such a case.   The object and purpose of these letters should be considered.   They should be construed in the light of the surrounding circumstances, and the intention of the parties be gathered from their whole contents.   In aid of their construction, if the intention of the parties were doubtful, I think it would have been competent to have shown, upon the

trial, the previous understanding they had regarding the subject. Nor can I see any objection to the admission of parol evidence showing that the parties had agreed in relation to it, where it is proposed to follow it up with proof of a subsequent recognition of the agreement by a writing. An answer in chancery, admitting the terms of an agreement, has frequently been held to take the question out of the statute of frauds. A parol agreement in such case is not illegal, though invalid unless evidenced by a writing. But the writing need not be made at the time. A subsequent acknowledgment of the agreement by a writing signed by the party to be charged, or his authorized agent, will be sufficient. This doctrine is so well settled that authorities need not be cited to support it.

I am of the opinion that the letters should have been admitted in evidence, and that the court below committed error in excluding them. The judgment appealed from must therefore be reversed, and the case remanded for a new trial.