## KISER *v.* HOLLADAY.
### [45 Pac. 759.]

VOLUNTARY SERVICE—IMPLIED REQUEST AND PROMISE TO PAY.—As between strangers, where one performs services for the benefit and with the knowledge and tacit consent of another, under such circumstances as to give the latter reason to believe that payment therefor is expected, a promise to pay a reasonable compensation will be implied: *Glenn* v. *Savage*, 14 Or. 577, and *Forbis* v. *Inman*, 23 Or. 72, approved.

From Multnomah: E. D. SHATTUCK, Judge.

This is an action by Andrew Kiser against Joseph Holladay to recover on a *quantum meruit* for work and labor done and performed between and including July ninth, eighteen hundred and eighty-nine, and July thirtieth, eighteen hundred and ninety-four. The defendant denies specifically the allegations of the plaintiff's cause, and by way of a separate defense sets up an alleged agreement whereby about July tenth, eighteen hundred and eighty-nine, defendant agreed to furnish plaintiff, and plaintiff agreed to accept, board and lodging at Seaside, in Clatsop County, Oregon, in full satisfaction of all services to be performed by him for defendant, and that defendant has so furnished him with board and lodging during all the time stated in the complaint. These facts having been put in issue by the reply, trial was had before a jury, and the result being favorable to plaintiff, defendant appeals.

AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. Charles H. Carey.*

For respondent there was a brief by *Messrs. Stott, Boise and Stout,* with an oral argument by *Mr. Raleigh Stott.*

Opinion by MR. JUSTICE WOLVERTON.

The notice of appeal contains two assignments of error, but the one relied upon, and the only one urged at the hearing, arises upon the following instruction: "If this plaintiff entered upon this work which he claims to have entered upon, and engaged in it, and Holladay knew of it, and was further notified that the plaintiff expected compensation of some kind for it, and Holladay made no objection to it, but allowed the plaintiff to proceed, then there would be an implied promise to pay for the work what it was reasonably worth. But whether there is any such fact in this case is for the jury to judge." It is predicated of this instruction that it assumes the existence of some evidence before the jury upon each of the following propositions: *First,* that Holladay knew plaintiff was performing services for him; *second,* that he was notified by plaintiff that he was performing services; *third,* that he was also notified that the plaintiff expected compensation of some kind for it; and, *fourth,* that, after being notified, he made no objection, but allowed plaintiff to proceed with his work. The contention is that there was no evidence whatever upon either or any of these propositions, and hence that it was

error to instruct the jury to find whether such facts existed, as it was in effect telling the jury that the evidence submitted to them tended to the establishment of such facts. If the counsel's premises are well founded the contention is fatal to the instruction. Of this we will inquire.

The defendant's contention at the trial seems to have been that because of plaintiff's age, having been born in eighteen hundred and thirteen, he was feeble and decrepit, and unable to work or perform manual labor to any considerable extent, but, having formerly been of service to his brother, Ben Holladay, he (defendant) allowed him to remain on his place and make it his home, and furnished him board and lodging as a matter of charity, but with the distinct understanding that he was to receive no wages for any light services that he might render about the place. Prior to the commencement of the term for which plaintiff claims wages, he had worked upon the premises, and received compensation therefor through the receiver of Ben Holladay's estate. The defendant became the owner of the premises about July tenth, eighteen hundred and eighty-nine, and for the purpose, as he says, of cutting down expenses, he notified the plaintiff both verbally and in writing that he could not afford to pay him any wages for work he might do on the place, but that if he (plaintiff) wished to remain on the farm, he (defendant) would not make any charge for board or room rent. Such a notification would imply that there had been a previous service for which a liability for wages had been incurred,

but plaintiff denied positively that he ever received any such notices, and thus it became a question for the jury to pass upon. The defendant's alleged agreement with plaintiff that all services to be performed by him should be done and performed in consideration of his board and lodging seems to have been based upon these notices and the understanding of the parties at the time the notices are supposed to have been given. The testimony upon all points is very conflicting, except touching the fact that the plaintiff was furnished his board and lodging by defendant. There is strong evidence that he did considerable work in one way and another, in taking care of defendant's stock, with which the farm was well supplied, milking a number of cows during the summer season, making the butter, and doing divers and sundry chores in and about the place, which was estimated by plaintiff's witnesses to be worth from twenty dollars to thirty-five dollars per month; and, while there was much testimony to the contrary, tending to show that his services were trivial and of but little or no value to defendant, the question touching the extent and value thereof was for the jury to determine.

The plaintiff testified, among other things: "Joseph Holladay * * * would come down every summer and stay two or three months." Of this there was some corroboration. Further on he says: "I did not get any wages, because I was not paid it. I claimed my wages then as well as any other man that worked there." Question—"When did you make a claim for your wages in eighteen hun-

dred and eighty-nine, and to whom did you make a claim; did you ever make a claim to Joseph Holladay in eighteen hundred and eighty-nine?" Answer — "Whenever I did not make a claim for wages it was probably for this reason, whenever I wanted money or anything he would furnish probably what I wanted, such as clothing and the like of that." Q.—"Did he ever pay you any stipulated wages in any month?" A.—"No, sir." Q.—"Did you ever demand any?" A.—"No, I did not." * * * Q.—"During that time (while Marquart was on the place) did you make any claim at all for wages?" A.—"I did not make any claim. It wasn't my business; I did not look after the money. I looked after my stock and duties." Q.—"You did not care about the money at that time?" A—"If I wanted any I would look after it then." Holladay testified, in substance: "I gave Mr. Kiser money in this way. He was an old man, decrepit, living off of me. I would instruct Mr. Epperly, who kept the house, and Malone, during the summer season when the hotel was open, to let him have a little money. When he came there to give him some money, to make him a present of it." Now, there was ample evidence to go to the jury which tended to show that plaintiff was performing services for defendant. If he was, there is evidence also tending to show that defendant had the best of opportunity of obtaining a knowledge thereof; that he was at the place in person from two to three months during the summer season of each year, and had his agents there constantly employed in the manage-

ment thereof. From this the jury might infer that the defendant had notice that the plaintiff was performing such services. The instruction does not give cause for an inference that there was testimony to support the proposition that defendant was notified directly by the plaintiff that he was performing services.

Upon the third proposition, the plaintiff says directly: "I claim my wages then (in eighteen hundred and eighty-nine) as well as any other man that worked there." While it is problematical, in the light of other testimony, as to just what he meant by this expression, or whether or not the effect of it is entirely destroyed by his other utterances conflicting therewith, there is here matter of evidence for the jury, and it must be admitted that, as touching the fourth proposition, there is evidence tending to its support. So that there was some competent evidence before the jury upon each of the propositions from which they might find the existence of all the facts inferentially comprehended by the instruction. It is insisted that before the defendant could be made liable for the services of plaintiff, they must have been performed at his request, or he must have promised to pay for them after knowledge thereof: *Glenn* v. *Savage*, 14 Or. 577 (13 Pac. 442). No recovery can be had for an act done for the benefit of another as a voluntary courtesy, and without his request. This is the doctrine announced in the case just cited, which is not only sound law, but is in consonance with good morals. But the law will imply a request on proof of cer-

tain circumstances and the beneficial nature of the services: *Osborne* v. *Rogers*, 1 Saund. 264, note 1; *Moore* v. *Fox*, 10 Johns. 244 (6 Am. Dec. 388). SPENCER, J., in *Oatfield* v. *Waring*, 14 Johns. 192, says: "A request may be inferred from the beneficial nature of the consideration, and the circumstances of the transaction." See also *Forbis* v. *Inman*, 23 Or. 68 (31 Pac. 204), and *Force* v. *Haines*, 17 N. J. Law, 412, where the doctrine is approved. As between strangers, the rule seems to be that when one person performs services for the benefit and with the knowledge and tacit consent of another, the law implies a promise to pay a reasonable compensation: *Weston* v. *Davis*, 24 Me. 375; *Hart* v. *Hart's Administrator*, 41 Mo. 445; *Schwarz* v. *Schwarz*, 26 Ill. 81; *Lewis* v. *Trickey*, 20 Barb. 387; *Livingston* v. *Ackeston*, 5 Cow. 531; *Guild* v. *Guild*, 15 Pick. 129. But the implication of such a promise may be overcome by evidence of an understanding that no compensation should be made. Where there is such an understanding, the law cannot imply a promise, and the understanding itself may be implied from circumstances: *Moulin* v. *Columbet*, 22 Cal. 510. It is said the law will not imply the promise where a near relationship exists, such as parent and child, or one standing *in loco parentis* to a foster child, etc.: *Andrus* v. *Foster*, 17 Vt. 556; *Brown* v. *Yaryan*, 74 Ind. 305; *Moulin* v. *Columbet*, 22 Cal. 510, and *Guild* v. *Guild*, 15 Pick. 129. And ordinarily, where a destitute person is received through charity, provided with necessaries and set to work, he is under no obligation to remain, and has

no claim for wages without some express agreement
to that effect, and yet one may be implied from
the peculiar circumstances of the case: 2 Parsons
on Contracts, *47.   Previous employment or servi-
tude is sometimes a circumstance of weight in deter-
mining the question and conditions of a subsequent
employment.   In *McMillan* v. *Page*, 71 Wis. 655 (38
N. W. 176) the court says: " In this case the plain-
tiff was an entire stranger to the defendant, and was
not a member of his family until she was employed
by him to work for a compensation; and when that
time of employment was at an end she continued
to work for him in the same general way but more
laboriously.   And if she did so without any express
agreement, the law would imply from their former
relations a promise on his part to pay her therefor
what her services were reasonably worth.   In other
words, she was not a member of his family except
as a hireling; and if she continued in his family,
the law would imply that she was still a hireling.
There was nothing to create any other relation be-
tween them except that of employer and employé."

If, in this case, the alleged agreement set up by
way of a separate defense had been proven, there
could be no possible ground for implying a promise
on the part of defendant to pay plaintiff any wages.
This was a question properly for the jury to pass
upon.   However, it was incumbent upon the plaintiff
in the first instance to show that he was entitled to
wages, either by reason of an express agreement or
promise, or of facts and circumstances from which
the law will imply a request, which will raise a prom-

ise to pay what the services were reasonably worth, or from which the law will imply the promise itself. Whether circumstances of this character are spoken of as implying the request and deducing the promise, or implying the promise, makes but little difference, the effect is to imply the promise, and it is upon this that the action is based as without it there could be no contract and hence no liability. The jury in passing upon this question had a right to consider in the first place whether any services were rendered. This being resolved in favor of plaintiff, then it was their province to consider the circumstances which induced and under which they were rendered, the situation, condition, and relation of the parties, the character and value of the services, and the necessity therefor, and if it was fairly deducible therefrom that the defendant had reason to expect or to believe that the plaintiff expected to be paid for his labor, and had done nothing to disabuse him of his expectations, but allowed him to go on rendering important services, then their verdict was right, the promise to pay for such service its reasonable worth was implied: Woods on Law of Master and Servant, § 62. We find no error in giving the instruction complained of, and the judgment below is therefore affirmed.        AFFIRMED.