Rehearing granted September 21, reargued October 11, reversed November 16, 1915.

# TAGGART *v.* HUNTER.*

(150 Pac. 738; 152 Pac. 871.)

**Evidence—Secondary Evidence—Contents of Writing.**

1. In an action to recover a broker's commission on a sale of land, wherein plaintiff testified that defendants gave him a written agreement of employment in the form of a letter, in response to a conversation between himself and defendant, and containing the substance of and confirming it, which writing had been lost, plaintiff's testimony as to such conversation was admissible, as being merely a statement of the contents of the writing.

**Frauds, Statute of—Requisites of Memorandum—Sale—Price.**

2. In an agreement of sale the memorandum must contain the full terms of the contract, and state the price, though if it recites that the price has been received, or if no price is named in the contract, or if the property has been sold for what it is reasonably worth, a statement of the price is unnecessary.

**Frauds, Statute of—Requisites of Memorandum—Consideration.**

3. The memorandum required by the various subdivisions of the statute of frauds (Section 808, L. O. L.) is not the contract itself, but is only evidence of the contract, showing the terms and parties, and if the law imports a consideration for a contract within the statute, no consideration need be stated in the memorandum.

**Brokers—Compensation—Statute of Frauds—Sufficiency of Memorandum.**

4. Under Section 808, subdivision 8, L. O. L., providing that an agreement authorizing or employing an agent or broker to sell real

---

*On written authorization by broker or agent to buy or sell land as a memorandum of contract of sale sufficient to satisfy the statute of frauds, see note in L. R. A. 1915C, 400.     REPORTER.

estate for compensation or a commission shall be void unless it, or some memorandum thereof, expressing the consideration, be in writing, subscribed by the party to be charged or by his lawfully authorized agent, and that evidence of the agreement shall not be received *other than the writing or secondary evidence of its contents,* a parol contract definite enough to be enforced is enforceable if reduced to writing and signed by the party to be charged; and a lost written agreement of employment which, as established, named the principal, mentioned the agent, described the land, stated the price for which it was to be sold, and authorized the agent to sell the land, subscribed by the principal, though not expressing any compensation to be paid the agent, when accepted and acted upon by procuring a purchaser, was a binding contract.

**Brokers—Contracts—Compensation.**

5. Under a broker's employment to find a purchaser of land for a commission, where the compensation was not stated therein, the law implied an agreement to pay what it was reasonably worth.

[As to when a broker becomes entitled to a commission, see note in 28 **Am. St. Rep.** 546.]

**Appeal and Error—Review—Motion for Nonsuit—Evidence.**

6. In the consideration of a motion for a nonsuit, where the record contains all the evidence produced upon the trial, the Supreme Court must consider the entire evidence.

**Witnesses—Cross-examination—Scope.**

7. In an action to recover a broker's commission upon a sale of real estate, the cross-examination of the defendant in regard to the delivery of a plat to the plaintiff was not objectionable, where it related strictly to the matter brought out on his examination in chief.

**Appeal and Error—Questions of Facts—Nonsuit.**

8. Under Article VII, Section 3, of the Constitution, as amended in 1910 (see Laws 1911, p. 7), providing that no fact tried by a jury shall be otherwise re-examined in any court of the state, unless the court can affirmatively say there is no evidence to support the verdict, where the Supreme Court cannot say that there was no competent evidence to support a verdict, it cannot hold error in overruling a motion for a nonsuit or a directed verdict.

**Brokers — Compensation — Statute of Frauds — Sufficiency of Memorandum.**

9. Under Section 808, L. O. L., declaring void certain agreements, including one authorizing or employing an agent or broker to sell real estate for compensation or a commission, unless the same, or a memorandum thereof, expressing the considerations, be in writing, and subscribed by the party to be charged, the written authorization to a broker to sell real estate must state the compensation to be paid him.

[As to what constitutes memoranda and by whom must be signed, see note in 47 **Am. Rep.** 532.]

From Multnomah: HENRY E. McGINN, Judge.

Department 2.   Statement by MR. JUSTICE BENSON.

This is an action by J. W. Taggart against J. N. Hunter and William Staats to recover a broker's commission on a sale of real estate. Defendants appeal from a judgment on a verdict for $4,500 in favor of plaintiff. The complaint alleges that the defendants employed the plaintiff to procure purchasers for certain timber lands, and agreed to pay him a reasonable compensation therefor; that he procured the purchasers; that $5,000 is a reasonable compensation; that $500 was paid thereon and no more.

All of these allegations are denied by the answer.

REVERSED. AFFIRMED ON REHEARING.

For appellants there was a brief over the name of *Messrs. Veazie, McCourt & Veazie,* with an oral argument by *Mr. Arthur L. Veazie.*

For respondent there was a brief over the names of *Mr. Martin L. Pipes, Mr. George A. Pipes* and *Mr. John B. Ryan,* with oral arguments by *Messrs. Pipes & Pipes.*

MR. JUSTICE BEAN delivered the opinion of the court.

The errors assigned relate principally to the sufficiency of the evidence under the statute of frauds and to the admission of oral evidence, which the defendants maintain was barred by Section 808, subdivision 8, L. O. L. From the bill of exceptions it appears that upon the trial plaintiff testified to a verbal employment of himself to sell the lands. Upon objection being made counsel for plaintiff stated that a writing had been given, but was lost, offered to prove the contents thereof, and introduced evidence tending to show that

the memorandum had been mislaid and could not be found. The substance of plaintiff's testimony as to the contents of the agreement, introduced over defendants' objection, was as follows:

"I met Mr. Hunter on the sidewalk in Bend, and I told him I had a buyer for a tract of yellow pine timber, and I wanted to know if he knew of any. He says, 'Yes, John; we have got the best tract in Oregon.' I says, 'How much is it?' He says, 'Practically 27,000 acres.' And he says, 'We have got it'—no, excuse me. I asked him if he could deliver it, and he told me they could, that they had it tied up with an option, but their time was very short, and they had to handle it quick, or they would lose it. 'Well,' I says, 'how much will it take to handle it?' and he says, 'about half a million dollars.' 'Well,' I says, 'I have only one party to present this to, and they are good people.' I says, 'I think that they are able to handle it.' And he wanted to know where they were. I told him that the secretary and treasurer of the company was here in Portland, and that he was the only man that I wanted to present it to; that the tract would not be peddled around, but that I would have to have written authority to present this tract to them, because he would not allow any bullconning. * * He told me he would give it to me. I says, 'Now, if you will fix that up, authorizing me to sell this tract of timber, and state in it a preliminary of what the tract contains, and so forth, and so forth, so I can present it intelligently, and give me the writing, I will take it to Portland.'"

Thereupon plaintiff testified that defendant Hunter gave him a writing in response to the conversation at the office of the defendants. When asked what the letter contained, Taggart stated that it was in effect as follows: J. W. Taggart: "I hereby authorize you to sell this tract of yellow pine timber," located in Crook County, a plat of which is inclosed, and stating how many thousand acres of the land could be cultivated

after the timber was all off, how many thousand feet it cruised to the acre, about the number of logs it was, surface cleared, and the price, $22.50 per acre. "[Signed] Hunter & Staats." Thereupon plaintiff stated that he took the letter and plat to a Mr. Noud, secretary and treasurer of the Noud-Blacker Timber Company, in Portland, a prospective purchaser, and left them with him. Afterward, in August, Mr. Noud and one Larry S. Franck went to Bend, from which place plaintiff went with them to where Mr. Hunter was taking a vacation on the Metolius River, about 30 miles away, and introduced them to Mr. Hunter. They examined the timber land and had the timber cruised. A stock company composed of Mr. Noud, his father, and associates was formed, and a sale was made to them. Negotiations were pending until about the next December, and considerable correspondence between plaintiff and Noud in regard to the transaction appears in the record. After the deal was closed defendants paid plaintiff $500 for his services, he protesting that nothing less than $5,000 was sufficient; that this amount was a reasonable compensation. Defendant Hunter told plaintiff that it was "an awful lucky thing that you got those fellows," and that there would be a big thing in it for plaintiff if the deal went through. Hunter was called as a witness for plaintiff, and testified that the land in question was sold by L. S. Franck to the Northwestern Timber Company for $488,000; that he and Mr. Staats, who are real estate dealers, received about $23,000 profit from the deal, $10,000 of which was stock in the corporation; that they held an option on the land for which they paid $500. Defendants objected to all this testimony, moved to strike it out for the reason stated, and at the close of plaintiff's case moved for a nonsuit upon

the ground that the evidence was not sufficient to be submitted to a jury, which motions were denied. Thereupon defendants introduced evidence tending to show, among other things, that defendants paid plaintiff $500, for the reason that Mr. Noud took $5,000 of stock in the purchasing company. Defendant Hunter also testified on behalf of the defendants in part as follows: ·

"I never told the plaintiff I would give him anything he might ask, or words to that effect, in case he found a buyer for this land, or anything of the kind. His testimony in that respect is not true. At the time I gave him the map or plat containing a description of the land, the only writing I gave him, according to the best of my knowledge, was just a description of the land, telling how many acres there were in the tract, about 22,101 acres. * * I could not say whether there was a letter, or whether it was written on the plat. * * He was down at Portland about a week, and when he came back he said, 'Boys, I am sorry I could not do anything with the land in Portland.' He said that he put it up to Mr. Noud, but that the tract was too large for him to handle, so we did not think anything more about it."

Hunter stated that the $500 was paid to the plaintiff as a present because of the fact that Mr. Noud had taken $5,000 of the stock of the purchasing company. On cross-examination, he testified that defendants gave the plaintiff the plat because he said, "I am going to Portland, and I might be able to do something with this land for you"—that he might find them a buyer. Thereupon the witness was asked this question: "Q. Well, what did you give it to him for?" To this question the defendants objected on the ground that oral evidence is incompetent to prove the employment of plaintiff, which objection was overruled by the court,

and the defendants saved and were allowed an exception to the ruling, whereupon the witness answered:

"A. Well, he said he thought he could get us a buyer for this land, and that was the object. We thought we would give it to him and let him try. We knew he could not do anything without a plat or a description of the land. We would have been glad for him to furnish us a buyer. We intended for him to get a buyer if he could. We gave him a description of the land in writing, with the price, $24 an acre, and let him bring it to Portland."

The defendant W. H. Staats was called as a witness on behalf of the defendants, and, being sworn, testified as follows:

"I saw the plat and the writings that were delivered to Mr. Taggart about the 10th of July, 1910, which he has testified about and which he brought down to Portland to show to Mr. Noud. The land that we had an option on was blocked off on the plat with red ink, and we wrote a little description, telling the number of acres, 22,101, and the lay of the land, and that it was good grazing land after the timber was taken off, and that is about all there was on that plat. There was no other writing besides the plat. The price was stated, $24 per acre."

On cross-examination, this witness stated that the writing given plaintiff was written by Mr. Hunter, but was not signed; that it did not indicate that Mr. Hunter had the land for sale, but was just a piece of paper with the price on it; that defendants knew plaintiff was coming to Portland, and expected him to use the plat; that plaintiff asked defendants for the plat, and said:

" 'I am going to Portland, boys, and I understand you have got some yellow pine timber to sell.' We told him we had, and he said, 'If you will make me a plat of it, I will take it along, and maybe I can do

78 Or.—10

something with it.' We gave it to him on those terms, and he took it along."

No objection was made to the cross-examination of Mr. Staats.

It is contended by counsel for plaintiff that the direct and cross-examination of defendants discloses the contract of employment alleged in the complaint; that no express promise to pay was necessary to be proved (citing *Kiser* v. *Holladay,* 29 Or. 338 [45 Pac. 759]); that where a party admits the existence of an agreement within the statute of frauds, or permits parol evidence of its contents to be proved without objection, he waives his right to require a writing (citing *Sorenson* v. *Smith,* 65 Or. 78, 92 (129 Pac. 757, 131 Pac. 1022, Ann. Cas. 1915A, 1127, 51 L. R. A. (N. S.) 612); *Scofield* v. *Stoddard,* 58 Vt. 290 (5 Atl. 314); *Livermore* v. *Stine,* 43 Cal. 274).

1. It is first urged by defendants that the trial court erred in permitting the plaintiff to state the conversation between himself and defendant Hunter in regard to employment. If this were all, there would be grounds for the objections, but when we consider that the plaintiff further testified that the defendants gave him a writing in the form of a letter "in response to said conversation," meaning, as we construe the evidence, that the writing contained the substance of and confirmed the same, it appears to be stating the contents of the writing backward, and is not a reversible error: *Fisk* v. *Henarie,* 13 Or. 156 (9 Pac. 322).

We come then to the important and often troublesome question as to the sufficiency of the writing to take the case out of the statute of frauds or the waiver of any defect therein or want of writing by defendants. Section 808 provides, in part, as follows:

"In the following cases the agreement is void unless the same or some note or memorandum thereof, expressing the consideration, be in writing and subscribed by the party to be charged, or by his lawfully authorized agent; evidence, therefore, of the agreement shall not be received other than the writing, or secondary evidence of its contents, in the cases prescribed by law. * * 8. An agreement entered into subsequent to the taking effect of this act, authorizing or employing an agent or broker to sell or purchase real estate for compensation or a commission."

2. As an illustration, in an agreemnt of sale, the memorandum must contain the full terms of the contract; the price should be stated, but if it contains a recital that the price has been received, it is then unnecessary. It is also unnecessary if no price has been named in the contract, or the property has been sold for what it is reasonably worth: 3 Jones Ev., § 429; *Hoadly* v. *McLaine,* 10 Bing. 482; Browne, Stat. Frauds (5 ed.), § 377; *Chase* v. *Lowell,* 7 Gray (Mass.), 33.

3. It should be borne in mind that the memorandum required in the various sections of the statute is not the contract itself. The writing is only the evidence of the contract showing the terms and parties: 3 Jones, Ev., § 430. If the law imports a consideration for a contract falling within the statute of frauds, no consideration need be delineated in the memorandum thereof: 20 Cyc. 263. It was said by Mr. Chief Justice LORD in *Johnston* v. *Wadsworth,* 24 Or. 494, 503 (34 Pac. 13, 15) after referring to our statute as it was then:

"The object of the statute of frauds was to prevent the facility to fraud and perjury to which contracts dependent upon the memory of witnesses were exposed, by requiring them to be reduced to writing. When this is done, there does not seem to be any rea-

son why the consideration might not be proved by parol, as in the case of any other contract, or, if there is any reason for expressing the consideration, the true one ought to be expressed, yet the authorities cited show that the words 'for value received,' or that a seal itself, sufficiently expresses the consideration.''

In that case no consideration for the agreement to purchase real property was expressed in the memorandum except by the seal of the defendant.

4-6. The statute of frauds, particularly subdivision 8, which is the amendment of 1909, requires that some note or memorandum of the agreement, ''authorizing or employing'' an agent or broker to sell or purchase real estate for a compensation, be in writing. A parol contract which was definite enough to be enforced before the amendment was enacted is enforceable since the statute was passed, if it is reduced to writing and signed by the party to be charged. In the case at bar the action is based upon the agreement of defendants to employ plaintiff to sell their lands. The principal is named, the agent is mentioned, the land is described, and the price or consideration for which the property is to be sold, given. What the agent is to do clearly appears, viz., to sell the land. ''It was subscribed by the party to be charged.'' There is another element of the contract, the compensation of the agent, that may or may not be definitely agreed upon. If it is agreed upon, it becomes one of the terms of the agreement, and should be stated in the memorandum, and, if not, the law implies an agreement to pay what it is reasonably worth. The statutes of Nebraska and New Jersey require the compensation to be fixed and stated in the agreement. No express provision to pay was necessary to be proved: *Kiser* v. *Holladay,* 29 Or. 338 (45 Pac. 759). The compensation for the services to be

performed is the price thereof. It should not be confounded with the consideration for the promise or employment: Jones, Ev., § 429, p. 128. The consideration for the agreement which is clearly inferable from the terms of the memorandum was that plaintiff should find a buyer for the timber lands if he could. There was evidence tending to show, and the jury might reasonably find from the writing in effect, that defendants authorized plaintiff to sell their lands if he could find a purchaser for the same. When this proposal was accepted and acted upon by the plaintiff in procuring a purchaser who purchased the land and defendants paid plaintiff $500 therefor, it became a binding recognized contract: *Henderson* v. *Lemke*, 60 Or. 363 (119 Pac. 482). It cannot be successfully contended that it was necessary for the promisee, Taggart, to sign the memorandum or accept the proposition in writing. No particular form of words expressive of the consideration for the grant of authority to sell real property need be written in the memorandum, but the consideration must nevertheless appear: *Johnston* v. *Wadsworth*, 24 Or. 494, 503 (34 Pac. 13, 15); *Church* v. *Brown*, 21 N. Y. 315, and cases there cited. If from a reasonable construction of the instrument the consideration is necessarily inferable from the terms thereof, it is expressed within the meaning of the statute.

The defendants, after plaintiff had rested his case, introduced evidence tending to show the employment of plaintiff and the transaction of furnishing him with the plat and description of the timber lands in order that he might make the sale. In the consideration of the motion for a nonsuit, where the record contains all the evidence produced upon the trial, as it does in this case, we must consider the entire evidence: *Trickey* v.

*Clark*, 50 Or. 516 (93 Pac. 457); *Crosby* v. *Portland Ry., L. & P. Co.*, 53 Or. 496 (100 Pac. 300, 101 Pac. 204); *Oberstock* v. *United Rys. Co.*, 68 Or. 197, 204 (137 Pac. 195); *Taylor* v. *Taylor*, 54 Or. 560, 568 (103 Pac. 524). The amendment to the statute of frauds was enacted for the purpose of preventing real estate brokers from fraudulently claiming a commission when they were not authorized in writing to make the sale. It was not the legislative intent to require any more specific or technical employment or authorization for a broker to act than had been theretofore necessary. It was the main object that such authority should be proven by a writing or secondary evidence of its contents. The law seems to contemplate that the authorization of a broker to sell land should be in the ordinary form used by men in business. It may be informal as long as it complies with the statutory requirements. Such memorandum should receive a practical construction. Taggart could not, in the nature of affairs, agree to sell the land: Brown, Stat. Frauds, § 353a. The writing proven by plaintiff to have been executed by defendants Staats and Hunter was sufficient to carry out the spirit and letter of the statute and take the case out of the statute: *Straight* v. *Wight*, 60 Minn. 515 (63 N. W. 105); *Brewer* v. *Horst-Lachmund Co.*, 50 L. R. A. 240, note.

7. The cross-examination of defendant Hunter in regard to the delivery of the plat to plaintiff related strictly to the matter brought out on his examination in chief, and was not objectionable.

8. Guided by Article VII, Section 3, of the Constitution as amended in 1910 (see Laws 1911, p. 7), we cannot say there was no competent evidence to support the verdict; therefore there was no error in overruling

the motion for a nonsuit or directed verdict. It follows that the judgment of the lower court is affirmed.

AFFIRMED.

MR. CHIEF JUSTICE MOORE and MR. JUSTICE EAKIN concur.

MR. JUSTICE HARRIS dissents.

---

Reargued on rehearing October 11, reversed November 16, 1915.

## ON REHEARING.

### (152 Pac. 871.)

On rehearing there was a brief for appellants over the name of *Messrs. Veazie, McCourt & Veazie,* with an oral argument by *Mr. Arthur L. Veazie.*

For respondent there was a brief over the names of *Messrs. Pipes & Pipes* and *Mr. John B. Ryan,* with oral arguments by *Mr. Martin L. Pipes* and *Mr. George A. Pipes.*

In Banc.     MR. JUSTICE BENSON delivered the opinion of the court.

9. Upon the rehearing we have considered but one question: Is the alleged memorandum sufficient to take the case out of the statute of frauds? The first paragraph of the Oregon statute of frauds reads thus:

"In the following cases the agreement is void unless the same or some note or memorandum thereof, expressing the consideration, be in writing and subscribed by the party to be charged, or by his lawfully authorized agent; evidence, therefore, of the agreement shall not be received other than the writing, or

secondary evidence of its contents, in the cases prescribed by law'': Sec. 808, L. O. L.

Then follows an enumeration of the cases to which the law is applicable. No. 8, the one pertinent herein, was added to the statute in 1909, and reads thus:

"An agreement entered into subsequent to the taking effect of this act, authorizing or employing an agent or broker to sell or purchase real estate for compensation or a commission."

The memorandum relied upon in the present case was sought to be established by secondary evidence of its contents, the paper having been lost or destroyed. The plaintiff testified that it read substantially as follows:

"J. W. Taggart:

"I hereby authorize you to sell this tract of yellow pine timber, located in Crook County, a plat of which is inclosed, and stating so many thousand acres of the land could be cultivated after the timber was all off, how many thousand feet it cruised to the acre, about the number of logs it was, surface cleared, and the price $22.50 per acre.

"[Signed]   HUNTER & STAATS."

This statement, reduced to its simplest terms, is an authorization of plaintiff to sell a particular tract of land at a specified price per acre. It is signed by the party sought to be charged, and, if it expresses the consideration, it is sufficient. The problem submitted then is: What is the true interpretation of the statute? To an unsophisticated layman, reading the two clauses of the law above quoted, it would undoubtedly mean that, if I sell my services as a real estate broker, I cannot recover therefor, unless I have a written memorandum signed by my employer specifying the land I am to sell and the compensation I am to receive for

bringing about such sale. It would further impress the aforesaid layman that I must also rely upon the written memorandum as the sole evidence of any agreement to pay me for my services; for in such an agreement it is not apparent that there are any other essential elements.

"The party to be charged" is necessarily the one against whom enforcement of the agreement is invoked, and the only consideration which can be expected from him is to pay for the broker's services. In the case of *Fisk* v. *Henarie,* 13 Or. 156 (9 Pac. 322), the court, speaking of a similar agreement, says:

"The writing in such case need not be signed by both parties, nor contain any terms further than that, if the broker will procure such purchaser, he will be allowed a stated commission."

This interpretation is adopted in the case of *Sorenson* v. *Smith,* 65 Or. 90 (129 Pac. 761, 131 Pac. 1033, Ann. Cas. 1915A, 1127, 57 L. R. A. (N. S.) 612), wherein Mr. Justice MOORE says:

"It is thought that the primary object that induced the enactment of our statute, hereinbefore quoted, demands that, where the original contract respecting the broker's compensation was not in writing, as required, the ratification can only be by a writing."

Again, in the opinion upon rehearing, the same learned justice says:

"Because George Sorenson, the plaintiff's assignor, was employed by, and was the subagent of, F. A. Kribs, then no privity of contract existed between such substituted agent and the defendant, Charles A. Smith, and the latter, never having stipulated in writing to pay a commission to the subagent, did not by negotiating the sale of the lands to C. P. Bratnober and the Storey-Bracher Lumber Company ratify Krib's employment of Sorenson."

In the late case of *Taylor* v. *Peterson,* 76 Or. 77, (147 Pac. 520), Mr. Justice BURNETT, after quoting the language of our statute, stated:

"In this respect our Code is more stringent than any other to which our attention has been directed. In mandatory language it forbids proof of any kind other than the writing, yet here the plaintiff would rely upon the oral testimony entirely, unless we may except the newspaper article to which reference has been made. As already pointed out, that does not satisfy the statute, because, for one thing, it does not express the consideration."

In that case the writing signed by the party to be charged said:

"Several weeks ago I made a tender to the authorities through my agent, J. A. Taylor, of my property," referring to property elsewhere described in the article.

It is true that in the decisions there can be found some dicta indicating that the writers are not in full harmony with some of the provisions of the statute of frauds, and would be satisfied with a very slight performance of its requirements. Nowhere do we find any encouragement for the doctrine that its provisions or any one of them can be entirely ignored with impunity. The decisions of other states are of slight value to us in the solution of this problem, by reason of the diverse language used in their statutes. The first important particular in which the statutes differ may be best appreciated by noting the fact that the Oregon statute declares the agreements in the cases mentioned to be void. We find this to be the case in only eight other states, viz.: Alabama, Michigan, Nebraska, Nevada, New York, Washington, Wisconsin and Wyoming. In California, North Dakota, South Dakota and Montana the contract is declared to be "invalid,"

or "not valid." The remaining states declare either that no evidence other than the writing is competent in the cases specified, or that no action shall be maintained thereon. It will be observed that in our state, and in the few others named above as in the same class, the law challenges the vitality of the contract or agreement, while in the others the statute affects only the remedy. The true interpretation of our law is clearly expressed in the case of *Pierce* v. *Clarke,* 71 Minn. 121 (73 N. W. 523), in which the following language occurs:

"The English statute of frauds differs from ours. That provides that no action shall be brought upon such contracts unless they are in writing, and signed by the party to be charged. * * In some instances— perhaps in many—under the English statute, such contracts would not be absolutely void, as under ours. It is proper here to call attention to an erroneous statement as to the effect of our statute found in the case of *Hagelin* v. *Wacks,* 61 Minn. 214, 216 (63 N. W. 624). The writer hereof, who wrote the opinion in that case, stated that the statute of frauds does not declare oral contracts as to estates or interests in lands void, but merely that they are not enforceable by action, citing *Trowbridge* v. *Wetherbee,* 11 Allen (Mass.), 361; *Lowman* v. *Sheets,* 124 Ind. 416 (24 N. E. 351, 7 L. R. A. 784). Such is not the law under our statute, because it makes such contracts void. Evidently the writer had in mind the English statute, which does not declare such contracts void, but nonenforceable by action"— citing *Madigan* v. *Walsh,* 22 Wis. 501, to the same effect.

It seems clear that, if a parol agreement is void under the statute of frauds, no blunder, or even intentional admission of incompetent evidence, could vitalize the contract to such an extent as to justify a recovery thereon. The authorities called to our attention which appear to sustain the converse theory are either

from states whose law does not declare such contracts void, or are in the same category with the case of *Hagelin* v. *Wacks,* 61 Minn. 214, 216 (63 N. W. 624), which the Supreme Court of Minnesota so frankly repudiates. Quoting again a Minnesota case, *Taylor* v. *Allen,* 40 Minn. 433, 434 (42 N. W. 292), we read as follows:

"The plaintiff suggests that the written memorandum in this case is aided or supplemented by certain admissions in the answer. But these will not help matters. It is now the settled law that the defendant can have the benefit of the statute, even if he admits an oral agreement. He may admit a verbal agreement, and yet assert its invalidity"—citing Browne, St. Frauds, § 509; *Wilson S. M. Co.* v. *Schnell,* 20 Minn. 40 (Gil. 33).

We have examined with great care the authorities cited by respondent, and do not find that they sustain his contention. The case of *Kiser* v. *Holladay* 29 Or. 338 (45 Pac. 759), is cited to sustain the doctrine that no express promise to pay is required to be included in the memorandum. That was an action to recover on a *quantum meruit* for work and labor, and therefore is not in point; for no one will contend that a person may not recover upon an implied promise, unless the statute requires the promise to be in writing. The case of *Sorenson* v. *Smith,* 65 Or. 78 (129 Pac. 757, 131 Pac. 1022, Ann. Cas. 1915A, 1127, 57 L. R. A. (N. S.) 612), which is relied upon to support the contention that the defense of the statute is waived by admitting without objection any evidence tending to support the parol contract, does not, we think, sustain this doctrine. It is true that in the opinion upon the rehearing (65 Or. 92 (131 Pac. 1023, Ann. Cas. 1915A, 1127, 57 L. R. A. (N. S.) 612), the court says:

"In the former opinion the testimony admitted without exception was deemed competent, and it was also considered that the statute of frauds, as far as it related to Sorenson's employer was waived by not objecting to the admission of testimony tending to show that the contract sued upon was not evidenced by any writing."

A careful examination of the entire opinion discloses the fact that this statement was not necessary to the decision, which was based upon the fact that an examination of all the evidence failed to disclose a case sufficient to go to the jury. The case of *Scofield* v. *Stoddard,* 58 Vt. 290 (5 Atl. 314), is not in point, for the reason that the Vermont statute does not declare such contracts void, but simply states that "no action shall be brought," etc. The case of *Livermore* v. *Stine,* 43 Cal. 274, is not of any practical value, for the reason that the court distinctly says that the contract then under consideration was not within the statute of frauds, and its statement in regard to waiver is pure *dictum.* It may also be noted that the California statute does not use the term "void," but declares such contracts to be "invalid." In the case of *Fisk* v. *Henarie,* 13 Or. 156 (9 Pac. 322), it will be noted there was a writing signed by the party to be charged describing the land, naming the price at which it was to be sold, and specifying the commission to be received by the broker. It will further be observed that this case was determined under the California statute, which differs from ours in that it employs the following language:

"Evidence, therefore, cannot be received, without the writing, or secondary evidence of its contents."

In the case of *Johnston* v. *Wadsworth,* 24 Or. 494 (34 Pac. 13), the court held that the instrument sued

upon, being under seal, imported a consideration and was a sufficient memorandum. The remarks of the learned justice who wrote the opinion in regard to parol evidence do not purport to be a declaration of the law, but a criticism of its logic. There were other cases cited upon various points, but these we have referred to are sufficient to disclose the nature of the authorities relied upon.

However we may regard the statutes of our state, we are not at liberty to repeal them by interpretation.

The judgment of the trial court is reversed and the action dismissed.

REVERSED ON REHEARING. ACTION DISMISSED.

MR. JUSTICE HARRIS concurs in the result.

MR. JUSTICE BEAN delivered the following dissenting opinion:

I am still of the opinion that the written authorization shown by the evidence expresses the consideration and complies with the statute. I therefore adhere to the former opinion herein.