[ Argued March 16; decided March 28; rehearing denied July 13, 1893.]

## GEO. W. HAHN v. GUARDIAN ASSURANCE CO.

### [S. C. 32 Pac. Rep. 683.]

1. AGENTS' AUTHORITY — INSURANCE.— The acts of an agent performed within the scope of his real or apparent authority, are binding upon his principal. The public have a right to rely upon an agent's apparent authority, and are not bound to inquire as to his special powers unless the circumstances are such as to put them upon inquiry. *Hardwick v. State Ins. Co. 20 Or. 547, approved.

2. AGENT — EVIDENCE OF AUTHORITY.—Where a person represented himself as the general agent of an insurance company, and the assured, without knowledge of any limitation on his powers, paid him the premium and left the city, entrusting the management of the whole affair to his hands, and afterwards received from him the policy which the company had made out and sent to him, the jury are justified in finding that the agent was a general agent, and not an agent with limited or special powers.

3. EXPERT TESTIMONY — INSURANCE RISK.— The question whether the risk was increased by changing a building which was used as a general merchandise store and lighted by coal-oil lamps, to a variety theater and lighting it with electric lights, relates simply to matters of common knowledge or observation, and is not the proper subject of expert testimony.

4. INSURANCE ADJUSTER — WAIVER OF PROOFS OF LOSS.— Preliminary proofs of loss are waived by the fact that an adjuster of the company, with its approval, refused to adjust or settle the loss, and stated to the insured that the loss would not be paid.

5. INSURANCE — WITHDRAWING WAIVER OF PROOF OF LOSS — FAILURE TO PRESENT PROOF.—Where an insurance company has waived the presentation of proofs of loss, it may, within a reasonable time, withdraw this waiver and require the proofs as prescribed in the policy. Thus, where the proofs of loss had been waived, but some time before the period for presenting such proofs had expired, the general agent of the company wrote to the attorneys for the assured, requesting them to furnish the proofs of loss in accordance with the terms of the policy, and enclosing blanks for that purpose, with an assurance that the matter would receive attention, the assured must present proofs of loss as required by the policy, or he cannot recover.

Multnomah County: E. D. SHATTUCK, Judge.

This is an action brought to recover the sum of $1,000 upon a policy of fire insurance, issued by the defendant

---

* NOTE.—A case involving the same question here presented, and having a valuable note attached, will be found in 19 Am. St. Rep. 600.—REPORTER.

to the plaintiff upon his two-story frame building, situated in Ellensburg, in the state of Washington. The verdict and judgment were for the plaintiff, and defendant appeals. Reversed.

*Joseph Simon ( Dolph & Mallory* on the brief), for Appellant.

*Geo. H. Williams (Wood & Linthicum* on the brief), for Respondent.

LORD, C. J.—The facts show that on the tenth day of December, 1888, the plaintiff insured with the defendant, through its agent Henry Ackerman, the above premises against loss or damage by fire, for the period of one year, and that defendant issued to the plaintiff its policy of insurance upon the same, for which he duly paid the premium therefor at the rate of ten per cent, or one hundred dollars; that on the fourth day of July, 1889, a general conflagration occurred in Ellensburg, which destroyed a large portion of the town, including the building so insured and owned by the plaintiff; that at the time the said building was insured, and the policy issued, it was occupied for the purposes of a general merchandise store, and so continued to be occupied until sometime during the month of April preceding the fire, when the character of the occupation of the building was changed from a general merchandise store to a variety theater; that a few days after the fire W. L. Chalmers, an adjuster, went to Ellensburg in the employ of several companies, including the defendant, to adjust and settle their losses, but that he refused to adjust the loss on plaintiff's building, on account of the change in its occupancy. The defendant refused to pay the loss, and denied liability therefor, mainly upon three grounds: *First,* that Mr. Ackerman, the agent at Portland, was a special agent with limited powers, and with no authority outside of Multnomah County, state of Oregon; *second,* that there had been a change in the character of the occupation of

XXIII. OR.—37.

the building, which increased the hazard, and avoided the policy by its express terms·; *third*, that there had been a failure to furnish the proofs of loss required by the terms of the policy. The conditions of the policy issued to plaintiff, relied upon to defeat the recovery, are as follows: "This entire policy * * * shall be void if the hazard be increased * * * by any change *. * * in the possession of the subject * * * of * * * insurance, etc. * * * If fire occur, the insured shall give immediate notice of any loss thereby, in writing to this company, and within sixty days after the fire, unless such time is extended in writing by this company, shall render a statement to the company, signed and sworn to by said insured, * * * as to the time and origin of the fire; the interest of the insured and of all others in the property; the cash value of each item thereof, and the amount of loss thereon; all incumbrances thereon," etc.

The testimony for the plaintiff shows that Ackerman represented himself to be the agent of the defendant, and solicited the insurance of plaintiff's property; that he negotiated the insurance of his property in the state of Washington with Ackerman, and with no other person; that he left the matter of the insurance wholly with Acker man, and left for New York, supposing that he had full authority to act as agent for the company in the state of Washington, and without knowledge or information of any limitation on his powers, that he received the policy from Ackerman, and paid him the premium for it. Upon the part of the defendant, the record discloses that it accepted the risk, issued the policy, received the premium without objection, and treated the policy as valid until after the fire. Upon this state of the case, the plaintiff contends that the defendant by its conduct held Ackerman out as its duly accredited agent, and he was justified in assuming that he had full authority to effect the insurance. The defendant, by its testimony, sought to limit the authority of Ackerman to that of a local agent,

whose jurisdiction was confined to Multnomah County, and, consequently, claimed that he had no authority to write policies or take risks on buildings in the state of Washington, nor to speak for, or bind, the company in relation to any risk outside of his territory. Upon the issue thus presented relative to Mr. Ackerman's powers as agent in the premises, the decision rested with the jury under proper instructions from the court. As the jury found a general verdict for the plaintiff, it must be conceded that Ackerman's authority as agent is established, unless the facts and circumstances to sustain the plaintiff's side of the issue are insufficient for that purpose.

1.  The acts of an agent, performed within the scope of his real or apparent authority, are binding upon his principal. It is enough, if, under all the circumstances, he had apparent authority in the matter, although in fact his authority was limited.  "Persons dealing with them in that capacity," says Mr. Wood, "are not bound to go beyond the apparent authority conferred upon them, and inquire whether they are in fact authorized to do a particular act for the company. It is enough if the act is within the scope of their apparent power, and beyond this third persons are not bound to make inquiry": 2 Wood, Ins. § 408. In *Hardwick* v. *Insurance Co.* 20 Or. 547 (26 Pac. Rep. 840), BEAN, J. says: "Where insurance companies deal with the community through a local agency, persons having transactions with the company are entitled to assume, in the absence of knowledge as to the agent's authority, that the acts and declarations of the agent are as valid as if they proceeded directly from the company." In *Phœnix Ins. Co.* v. *Spiers*, 87 Ky. 297 (8 S. W. Rep. 453), the court says:  "As to third parties, the agent should, in the absence of notice to the contrary, be regarded as possessing all the powers his occupation fairly imports to the public. Under this rule, an agent who solicits the insurance, takes the application, receives the premium, and delivers the policy, may, in our opin-

ion, by his conduct or acts, bind his company  *  *  *  in the absence of knowledge upon the part of the assured that his powers in this respect have been restricted." The assured has the right to rely upon the agent's apparent authority, and, unless the circumstances are such as to put him upon inquiry, he is not bound to inquire as to the agent's special powers. Nor can the authority of an agent be questioned when the acts of the company have been such as to amount to a recognition of his agency: *Swan* v. *Liverpool Ins. Co.* 52 Miss. 704. And Mr. Wood says that "where an agent is authorized to take a risk in one place, it is presumed that he had authority to take them anywhere, and a risk taken by him outside of his real jurisdiction will be binding upon the company": Wood, Ins. § 529; *Lightbody* v *North American Ins. Co.* 23 Wend. 18; *Ætna Ins. Co.* v. *Maguire*, 51 Ill. 342.

2. In the light of these principles of the law, assuming the testimony for the plaintiff to be true, the jury was authorized to find that Ackerman was a general agent, and empowered to effect insurance upon property located in the state of Washington    There was nothing in the circumstances, as indicated by the testimony, to excite inquiry as to the extent of his agency   He did not inform the plaintiff that .his jurisdiction was confined to Multnomah County, Oregon, nor that his application must be forwarded to the general agent at San Francisco for his approval. He represented himself as the agent of the company, and solicited the insurance on the property located in the state of Washington. He assumed to act with the full authority of an unrestricted agency. By his conduct the plaintiff was led to believe that he was vested with full powers to act for the company, and bind it by his engagements, and on this account he put the whole matter of insuring his property in the agent's hands, and left for other parts of the country to which his business called him. He dealt wholly with Ackerman; he paid the premium to him, and the company received it, and issued the policy, and sent it to

Ackerman, who delivered it to the plaintiff.   By his acts, coupled with the acts of the company, the jury, who were to decide as to the extent of his agency, were authorized to find that Ackerman was vested with the powers of a general agent.

3.   The next assignments of error relate to the competency and admissibility of certain expert testimony sought to be introduced by the defendant, which was disallowed by the court.   The defendant claims that it should have been permitted to prove by the testimony of experts that the change in the character of the occupation of the building materially increased the risk, and also to prove by such testimony how the change in the occupation of the building was regarded generally by underwriters.   The building insured was occupied as a general merchandise store, insured at ten per cent premium, and lighted by coal-oil lamps.   Upon the change of occupancy, electric lights were substituted.   Whether the change of occupancy increased the risk was a question for the consideration of the jury.   The general rule is that expert testimony is not admissible as to matters of common knowledge or observation, of which the jury can judge as well as the witness.   When the subject of a proposed inquiry is not a matter of science, but of common observation, upon which the ordinary mind is capable of forming a judgment, the opinion of an expert is not admissible: *Milwaukee R. R. Co.* v. *Kellogg*, 94 U. S. 472; 1 Smith's Lead. Cas. 286.

It is competent for an insurance company to prescribe the terms and conditions upon which it will assume risks. It may decide what risks are hazardous, or extra hazardous, or what are not so, and if they are specified and named in the policy, and prohibited, a violation of the condition avoids the policy.   This policy contains no provisions inhibiting or forbidding the writing of policies on variety theaters.   The plaintiff was entitled to make the change, unless it increased the risk.   The question was whether the change in the occupation of the building in-

creased the risk. Its determination involves no question
of science or skill, but simply matters of common knowl-
edge or observation, which the jury is as competent to
judge and determine as the witnesses offered as experts.
It is only in reference to matters upon which the unedu-
cated mind is incapable of forming a judgment that
experts are permitted to give their conclusions. Hence,
"it is not competent," as Mr. Wood says, "to inquire of
a witness what the effect is upon a risk, by leaving a
house unoccupied, or whether a risk has been increased
by certain alterations therein, nor whether certain facts
would have influenced the rate of premium, or were
material to the risk. Nor is it competent to show what
is generally understood among insurance men respecting
the hazardous or non-hazardous character of a certain
trade or business; or whether a loss resulted from negli-
gence; or whether, if certain facts had been known to the
witness, he would have taken the risk; or whether he
would, under a certain state of facts, have consented to
additional insurance; whether putting an additional
number of stoves into a building would have increased
the risk; whether, if certain facts had been known to the
agent, he would have issued a policy, or would have com-
municated them to his principal". 2 Wood, Ins. § 534, and
cases cited. And in all cases it may be said that, unless
the matters upon which the witness is called to give his
opinion are properly matters of skill or science, the facts
must be shown and the jury determine the result from
them.

4.   The next objection is to the failure of the plaintiff
to furnish the proof required by the policy. The record
discloses that W L. Chalmers was an adjuster who was
employed by several insurance companies, including the
defendant, to adjust and settle their losses. The testi-
mony indicates that he was a man of wide experience in
such matters, and in whom confidence was reposed by
the companies employing him, and that he went to Ellens-
burg to adjust and settle the loss sustained by the com-

panies he represented.   Mr. Landers, the general agent
of the defendant, testifies that Chalmers was employed
to examine into defendant's claim, the time being a few
days after the fire, but that no instructions were given to
him not to appraise or adjust plaintiff's loss.   In the dis-
charge of his duties, he obtained an estimate of the value
of the loss, but when he was informed of the change in
the use and occupation of the building, he refused to pro-
ceed and adjust the loss.   He at once wrote to the gen-
eral agent of the company, informing him of the change,
and of his conduct in the premises, which the agent ap-
proved.   Plaintiff testifies that subsequently Chalmers
told him that he could not adjust the loss because he had
notice not to do so;  that adjustments on other property
belonging to the plaintiff were all right, but that this loss
would not be paid by the company   The plaintiff also
testifies that about the first of August he had a conversa-
tion with Ackerman, who told him that the loss would
not be paid on account of the change of occupancy.   Sub-
stantially upon this state of facts, the plaintiff claims
that Chalmers was also an agent of the defendant, and
authorized to bind it within the scope of his employment,
which included the authority to waive the preliminary
proof of loss.   Hence, the plaintiff contends, when Chal-
mers, and also Ackerman, stated to the plaintiff that the
loss would not be paid on account of the change in the
occupancy of the building, it was a denial on the part of
the defendant of its liability, and operated as a waiver
by it of the requirement to furnish proof of the loss.

There is some diversity of opinion as to whether an
adjuster has authority to waive preliminary proof of loss,
but it seems to us, as ELLIOTT, J., said, that "the better
reason is with the cases that hold that he has; for a com-
pany that sends an agent to ascertain the nature, cause,
and extent of the loss, and employs him in that particu-
lar line of duty, may well be deemed to have invested
him with a general authority in all such matters": *Ætna
Ins. Co.* v. *Shryer et al.* 85 Ind. 363.   The rule is well set-

tled, and supported by numerous authorities, that a denial by a defendant of liability, or a refusal to pay, is a waiver of proof of loss. "The denial by the defendant," said Shipman, J., "of all liability, expressly conceded there was a loss, and was a notice to the plaintiffs that they would not be bound in any event, though formal proofs were furnished. Presentation of proofs under such circumstances was of no importance to either party; and the law rarely, if ever, requires the observance of an idle formality, especially after the party for whose benefit the original stipulation was made has rendered conformity thereto unnecessary, and practically superfluous": *Norwich & N. Y. Trans. Co.* v. *West Mass. Ins. Co.* 34 Conn. 570. "It is well settled," said the court in *Dibbrell* v. *Georgia Home Ins. Co.* 110 N. C. 193 (28 Am. St. Rep. 678; 14 S. E. Rep. 787), "that if, instead of extending the time for filing the proofs of loss, the adjuster who is charged with examining them informs the assured, before the expiration of the sixty days, that he denies the justice of his claim, and will not pay it, such conduct, by implication, renders it unnecessary to make out a statement of loss, and is held to be a waiver of the requirement to furnish it."

5.   It may be admitted within the principle announced by these adjudications, that the facts to which we have alluded were sufficient to authorize the jury to find that the defendant had waived the requirement to furnish proof of the loss; and, if the case stood alone upon such facts, it may be conceded that it would be unnecessary to further prosecute our investigation. The record, however, discloses that subsequently, and quite a while before the time had elapsed within which the plaintiff was required to furnish a statement of his loss, the eminent counsel who then and now represents the plaintiff, wrote to Mr. Landers, the general agent of the defendant at San Francisco, saying, among other things, that if "the defendant will state expressly why payment of Mr. Hahn's policy is refused, pointing out the clause or

clauses in the contract upon which such refusal is based, and the reason or reasons which support it, we will suggest what seems to us the error, if any, on the part of the company." To this letter the general agent wrote in reply, that he begged leave "to suggest that your client (Mr. G. W. Hahn) present to this office proof of loss claimed by him in connection with our policy No. 1,655,955, in strict accord with the printed terms thereof, and thereupon we will give the whole matter our full attention. In order to avoid technical errors in the form of proof, we enclose herewith two blanks, one of which you may retain, causing the other to be fully executed and forwarded to the undersigned." It is clear from the letter of the general agent that the defendant either did not understand that the proof of loss had been waived, or, if it had been waived by the conduct and declarations of its agents, that the defendant intended to withdraw the conclusion of waiver inferred from such conduct and declarations. Nor do counsel now, nor did the trial court, question the right of the defendant to withdraw such conclusion. In its charge the trial court expressly instructs the jury that "the company had the right to withdraw this conclusion if made within sixty days," but added, "if the jury believe that after the transactions aforesaid, the general agent notified plaintiff or his counsel that they now required the formal proof, informing him at the same time that when these were received they would give the matter their attention, such a notice, if made in good faith, and with the intent to give the matter a fair and just examination, and allow plaintiff to enter upon negotiations regarding it, and not made to catch plaintiff by hasty admissions, then defendant should be deemed to put itself in the position of accepting proofs of loss, and the obligation devolved on plaintiff to furnish them."

We are unable to find the evidence that indicates any want of good faith, or design to entrap the plaintiff into any hasty admissions by the request that he should fur-

nish the proof of loss.   Nor does it seem to us that the
circumstances, viewed in any light, are susceptible of
such inference.   There was plenty of time before the
expiration of sixty days for the plaintiff to furnish the
proof of loss, and its requirement is admitted to be a
prerequisite to the plaintiff's right of recovery, unless
the same had been waived by the defendant.   The letter
of the general agent was a simple request that the proofs
required by the terms of the policy should be furnished
him, and that for convenience in preparing the same he
had enclosed two blank proofs, one to be filled out, and
the other to be retained as evidence of the fact that such
proofs had been made, and it contained an assurance that
upon the receipt of such proofs, he would give the whole
matter his full attention.   What "matter" is this to which
the agent refers, and to which he will give his "full at-
tention," except the "matter" suggested by the letter of
plaintiff by his counsel?   That "matter" he assures the
plaintiff, or his counsel, shall receive his "full attention"
when the proofs of loss are furnished.   Why, then, not
make such proofs ?   There was ample time.   The blanks
were furnished upon which to make the statement of loss
to avoid any errors.   No possibility of any harm could
result to the plaintiff.   His interests were guarded by
eminent counsel whose ability was an assurance that
their client would not be entrapped into any admissions.
We do not think, therefore, there was anything in the
circumstances to justify the inference of bad faith, or
calculated to throw doubt upon the good faith of the
request for proof of loss, and consequently, that it was
error to submit to the jury whether such proof of loss
was made in good faith or not.   Except in this particular,
the charge is exceptionally able and clear, but for the
reason suggested, the case must be remanded for such
further proceedings as are not inconsistent with this
opinion.