HOLMES BLAIR v. JAMES A. AUSTIN ET AL.

FILED MARCH 17, 1904. No. 13,427.

Real Estate Broker: ACTION. Services as a real estate broker rendered for the owner of the land, without a written contract, can not be recovered for, as such, upon a *quantum meruit*.

ERROR to the district court for Lancaster county: ED-WARD P. HOLMES, JUDGE. *Reversed.*

*Flansburg & Williams,* for plaintiff in error.

*W. M. Morning* and *John J. Ledwith,* contra.

29

HASTINGS, C.

The main question in this case seems to be, whether the Nebraska statute, requiring all contracts for the selling of real estate between the owner and real estate brokers to be in writing, signed by both parties and fixing the amount of compensation, prevents any recovery specifically for a real estate broker's services in selling land, except such as is provided for by a contract answering these requirements?

The plaintiffs, defendants in error, brought suit in the district court to recover from Blair $325, alleging that they were real estate brokers, buying and selling real estate, for which services they charged their employers a commission; that in June, 1902, defendant owned all but 80 acres of a certain section of land in Lancaster county; that he then employed the plaintiffs to find a purchaser for the land and agreed to pay the usual commission, namely, 5 per cent. on the first $1,000 and 2½ per cent. on the rest of the purchase price; that plaintiffs did find a purchaser, with whom defendant entered into negotiations which resulted in a sale in February following; that just prior to the sale, the defendant, with full knowledge of their services and efforts, and that they had practically concluded the transaction, entered into independent negotiations with the purchaser, and conveyed to the latter the land for $12,000, and refused to pay plaintiffs' commission; that the reasonable value of plaintiffs' services was "the agreed and customary commission thereon," namely, 5 per cent. on the first $1,000 of the said purchase price and 2½ per cent. on the remainder, or $325, on which nothing was paid.

Defendant answered, admitting the ownership of the land; admitting the sale of it for $12,000; he says that in June, 1902, plaintiffs approached him and asked him to put a price on the premises; that he fixed the price at $22.50 an acre, and agreed to pay a commission of $50 on the first $1,000 of the consideration and $25 on each sub-

sequent $1,000; that said agreement was merely verbal and never reduced to writing; that plaintiffs submitted various offers from the final purchaser, but all were for a much less sum than $22.50 an acre, and were refused; that on October 8, plaintiffs, acting on behalf of the purchaser, offered $11,500 net for the premises, and advised the defendant that that was the best offer they could obtain from said purchaser; that they never effected a sale or made any other offer; that in February, 1903, one H. C. Young, a real estate broker, approached defendant with an offer of $12,000 from some purchaser for the land, though defendant did not know at that time who the purchaser was; that this offer was finally accepted and the sale consummated by Young; that plaintiffs had nothing to do with it and could not have effected the sale with the same purchaser, and that defendant paid to Young a commission of $300 for effecting the sale. The allegations of the answer were denied, and trial was had to the court without the intervention of a jury.

The court found: (1) Plaintiffs were real estate brokers, buying and selling real estate on commission; (2) That the defendant owned the land and agreed with plaintiffs in June, 1902, as stated in the answer; (3) that plaintiffs called the attention of James and Phil O'Brien to the land, and induced them to enter into negotiations for its purchase, and submit propositions to the defendant, the best one of which was for the sum of $11,500. This was not accepted but afterwards, by plaintiffs' efforts, the O'Briens were induced to offer $12,000; (4) That the O'Briens submitted this proposition through one Mc-Laughlin, to whose attention plaintiffs had brought the land and its price; that defendant accepted this prosposition, knowing that the purchasers were the same parties who had negotiated for the land through the plaintiffs; (5) That the O'Briens preferred to obtain the land through McLaughlin, and whether or not the sale could have been concluded without his assistance, the trial court was not able to determine; (6) That McLaughlin and Young received $300 commission for the sale.

The trial court found as conclusions of law: (1) That plaintiffs were the procuring cause of the sale, and entitled to recover upon a *quantum meruit* the reasonable value of their services, of which defendant had availed himself with full knowledge; (2) That the agreement alleged in the petition, not being in writing, was void, but notwithstanding its invalidity, plaintiffs were entitled to recover the reasonable value of their services, if sufficiently alleged in their petition, and, in the event they were not sufficiently ·alleged, they should have leave to amend in accordance with the facts. As a third conclusion, the court found that it was impossible to determine whether plaintiffs could have concluded the sale without McLaughlin's assistance, and that their services were reasonably worth the sum of $150, and, had the sale been concluded without McLaughlin's aid, such services would have been worth $300. In consideration of McLaughlin's assistance, only $150 were allowed as the reasonable value of the services. Motion for new trial was overruled, and judgment entered on the findings for $150 and costs, and defendant brings error.

His contentions are as above suggested, that the statute permits no recovery for services of this kind, except upon a written contract, and that, in any event, there is no sufficient pleading of services to entitle plaintiffs to recover anything except an agreed contract price, which is certainly forbidden. It is also urged that the evidence does not support the finding that the sale was induced by the plaintiffs' efforts.

Dealing with the last question first, it appears that, immediately after the arrangement with the defendant, the plaintiffs wrote to the O'Briens and other parties in regard to the land, and advertised it in Lancaster county newspapers; plaintiffs were well acquainted with one of the O'Briens, who then lived at Courtland, and, as a result, the latter personally examined the land; a good deal of negotiating ensued until some time in October, when the O'Brien brothers made the offer of $11,500 for

the land; this was the last correspondence had by plaintiffs with the purchasers; at the time the $11,500 offer was submitted and refused, plaintiffs told the defendant they would see if they could do better; from time to time after that, plaintiffs say they saw one of the O'Brien brothers, and renewed efforts to make the sale, and about the last of January, 1903, found that the O'Briens were in communication, through McLaughlin, with the defendant. Mr. Bridges testifies that the reasonable value of such services was the ordinary commission charged, which would be $325 for a $12,000 sale; the O'Briens deny any negotiations after October 8, 1902, with plaintiffs, but Mr. Bridges positively swears to a number of interviews after that date; the value of the services is expressly based upon the ordinary and current prices for such services, and not upon any value of plaintiffs' time; their expenses are not stated by plaintiffs. Defendant testifies that the O'Briens were brought to him by Mr. Young about January 27 or 28; that he had heard nothing from Austin & Bridges since the preceding October; that Mr. Young offered to find a purchaser for $12,000, for a commission of $300; defendant admits that his introduction to the O'Briens as prospective purchasers of his land was through the plaintiffs in July, 1902; defendant, on discovery that Mr. Young's proposed purchasers were the O'Briens, hesitated to close the matter, fearing his liability to plaintiffs for another commission; and he says he took counsel on the subject. Mr. Philip O'Brien testifies to talking with McLaughlin in September, and then promised the latter if the land was purchased it should be from him. McLaughlin is described by the O'Briens as an "old friend"; Mr. James O'Brien testifies to the same general purport; McLaughlin states that he got the land for sale from Young. O'Briens thought that $22.50 was too much for the land and finally offered $12,000; if they could not get it for that, they would not take it at all; this offer was accepted by Mr. Blair through Young, and the sale completed.

It will be seen from this evidence that a finding either way as to the value of the services of plaintiffs to defendant might be sustained; on their testimony plaintiffs were the cause of the sale, and, according to O'Briens', Mr. Young's and Mr. McLaughlin's, their negotiations had been definitely broken off at the time the sale was effected. It remains therefore to consider the question as to whether or not the statute above mentioned permits any recovery in the absence of a written contract. In *Baker v. Gillan*. 68 Neb. 368, the statute was held to be constitutional. Does it do what is not done by the statute of frauds, prevent a recovery for the reasonable value of services actually rendered in pursuance of a void agreement? The doctrine that such services are a good ground for recovery, *quantum meruit*, is well established in Nebraska. *Riiff v. Rübe*, 68 Neb. 543. The decisions in other states are collected in 23 Century Digest, col. 2450. Does section 74, chapter 73 of the Compiled Statutes (Annotated Statutes, 10258), go further than that in respect to a contract which, by its terms, is not to be performed within one year? Both are alike void; in case of the latter, however, one who is employed under such a contract is entirely at liberty to recover for the value of services actually rendered by him. Ought the same rule to be applied in both cases? Should the courts set up an implied agreement precisely the same, in effect, as the forbidden express one? If any recovery is allowed, should it not be for losses and expenses incurred, where there are any, and not for services as such?

A somewhat careful consideration of the statute now under consideration seems to indicate a distinction. In the case of an agreement for services, void because not to be performed within a year, a recovery for services rendered is in no way interfered with by the statute. The latter does not make an agreement to do that particular work void unless in writing. Consequently, the statute of frauds is not in any way inimical to a recovery on the implied contract for the work actually done. On the con-

Blair v. Austin.

trary, such a right is one of the results of doing completely away with the void oral agreement. The statute now under consideration, however, provides that any agreement for the performance of services as a real estate broker shall be void unless in writing. Is it not as applicable to an implied agreement as to any other? Is it not, in effect, a forbidding of all recovery distinctly for services in selling land which are not provided for by a written agreement?

In the case of payments made on an oral agreement to convey land which the recipient refuses to perform, the recovery is, of course, and always, for the money paid, not for any loss of profits on the land bargain. In this case it does not seem possible that plaintiffs can have any recovery of commissions for making a sale. If they have incurred expenses in the transaction at defendant's request and which have redounded to his benefit, they could doubtless recover for it as money laid out and expended for his benefit and at his request. If they had shown an absolute loss of time which could and would have been valuably employed, except for its use at defendant's request upon his employment, they could probably recover for that as time devoted to defendant's profit at his request, but for services as a broker in selling land, reckoned in percentage as commission, a written contract seems to be necessary under this statute.

It is recommended that the judgment of the district court be reversed and the cause remanded, with leave to amend the pleadings.

AMES and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded, with leave to amend the pleadings.

REVERSED.