Argued March 5, affirmed March 30, rehearing denied April 20, 1915.

## TAYLOR *v.* PETERSON.*

(147 Pac. 520.)

**Brokers—Compensation—Necessity of Written Contract.**

1. To recover for work and labor performed at the oral request of the defendant in selling land for him, it must be shown, not only that the defendant requested the performance of the service before Section 808, L. O. L., was amended by Act of 1909, page 69, so as to require an agreement, thereafter made, to sell real estate on commission to be in writing, and forbidding the introduction of any evidence thereof except the writing, but also that the plaintiff performed the services prior to that time, since there was no obligation to pay for them until they were performed.

> [As to validity of statute requiring contract providing for commission for sale of realty to be in writing, see note in Ann. Cas. 1913C, 727. As to right of real estate broker to commissions under oral contract of employment where statute requires written contract, see note in Ann. Cas. 1915A, 1133. As to acts which may constitute part performance, see note in 53 Am. Dec. 539. As to enforcement of contracts because of part performance, see note in 32 Am. Dec. 129.]

———————

*As to the necessity that agent's authority to purchase or sell real property be in writing, to enable him to recover compensation for his services, see notes in 44 L. R. A. 601 and 9 L. R. A. (N. S.) 933.          REPORTER.

Brokers—Compensation—Necessity of Written Contract—Full Performance.

2. The full performance by a broker of an oral contract to sell land for another on commission does not take the contract out of the statute of frauds, Section 808, L. O. L.

Brokers—Commissions—Action—Proof.

3. In an action for broker's commission, proof that the broker, who admittedly had no exclusive agency, offered the property to the city, and that the city thereafter purchased it, is not sufficient to entitle him to a commission, since it fails to show either that he secured the execution of a binding contract for the sale, or that he and not another was the means of bringing the parties together.

[As to when broker becomes entitled to commissions, see notes in 28 Am. St. Rep. 546; 39 Am. St. Rep. 225.]

From Multnomah: WILLIAM N. GATENS, Judge.

Department 1. Statement by MR. JUSTICE BURNETT.

This is an action by James A. Taylor against John H. Peterson.

The most essential allegation of the complaint is the following:

"That commencing on or about January 1, 1909, and ending on or about February 1, 1912, the plaintiff, at the special instance and request of said defendant, performed work, labor, and services for said defendant in negotiating for the sale of the above-described property and as a direct result of said negotiations, work, labor and services, and through the efforts of said plaintiff, said property above described was sold for said defendant for the sum of $35,000."

Asserting that the reasonable value of plaintiff's services mentioned is $5,000, and that the defendant repeatedly agreed that said sum should be considered between them as such reasonable value, the plaintiff demands judgment for that amount. The answer traverses all the allegations of the complaint, and alleges:

"The contract set forth in the complaint is oral and not in writing and is void by virtue of Section 808 of Lord's Oregon Laws."

The reply does not deny that the contract was oral, but does traverse the conclusion of law, to the effect that the agreement is void under the statute of frauds of this state. At the close of plaintiff's case in a trial by jury the Circuit Court granted a judgment of nonsuit on motion of the defendant, and the plaintiff appeals.          AFFIRMED.    REHEARING DENIED.

For appellant there was a brief and an oral argument by *Mr. Frank F. Freeman.*

For respondent there was a brief over the names of *Mr. M. M. Matthiessen* and *Messrs. Wood, Montague & Hunt,* with an oral argument by *Mr. Matthiessen.*

MR. JUSTICE BURNETT delivered the opinion of the court.

The statute in question, so far as applicable to this case, reads thus:

"In the following cases the agreement is void unless the same or some note or memorandum thereof, expressing the consideration, be in writing and subscribed by the party to be charged, or by his lawfully authorized agent; evidence, therefore, of the agreement shall not be received other than the writing, or secondary evidence of its contents, in the cases prescribed by law: * * 8. An agreement entered into subsequent to the taking effect of this act, authorizing or employing an agent or broker to sell or purchase real estate for compensation or a commission": Section 808, L. O. L.

The last clause, No. 8, was embodied in an amendment to this section by the act of February 9, 1909 (Laws 1909, p. 69), which took effect on May 21st of that year.

In support of his contention the plaintiff testified as follows:

"In January, 1909, Mr. Peterson suggested my making an effort to dispose of his property to the city. The matter was talked over. I was prepared to put the tender in at that time, and Mr. Peterson finally suggested there might be a change of administration, there might be an election in a few months, and it might be well to wait, thinking probably that the term of the administration was nearly expired, and they might not care to take it up until after election and let it lay over until the new officers were installed, which I did. He confirmed the matter, I remember, almost immediately. I think early in July, 1909, my first tender, my original tender, was a proposition to sell for a certain figure, or to trade for a 30-year lease of a waterfront at the foot of Stark Street, which the city owned. Mr. Peterson proposed to trade even for the lease; he was to erect a concrete dock there."

By timely objection the defendant opposed the consideration of such testimony on the ground that the evidence to support the contract described in the complaint must be in writing. The plaintiff as a witness also related a number of oral declarations of the defendant made in 1911, to the effect that he would pay plaintiff just the same. He also introduced in evidence the following documents: (1) The tender he made to the City of Portland under date of August 4, 1911, offering the property for sale at $35,000; (2) an offer of J. W. Travers proposing to sell the same property to the city for the same price; (3) the report of the committee on ways and means of the council of the City of Portland, recommending that among others the tenders of J. A. Taylor and J. W. Travers be placed on file, and submitting an ordinance authorizing the mayor to offer to the owner of the property in question the sum of $35,000 in jail bonds at par; and (4) a transcript of the record of a conveyance from the defendant and his wife to the City of Portland for

the realty named, in which the consideration of $35,000 was expressed. The declarations of several witnesses as to the reasonable value of the services of a real estate broker who effected the sale also appear in the record. The plaintiff testified to the effect that he interviewed various members of the city council and endeavored to create public sentiment in favor of the purchase of the tract whereon to build a city jail, and introduced an article, signed by the defendant and published in a newspaper in the city, treating of the desirability of the premises in which he said, under date of July 31, 1909: "Several weeks ago I made a tender to the authorities through my agent, J. A. Taylor, of my property," referring to that already mentioned.

1. The foregoing is a fair *résumé* of all the testimony introduced on behalf of the plaintiff. The only writing said to be subscribed by the defendant imputing agency to the plaintiff is the newspaper article. That, however, does not purport to be a contract, and does not express any consideration. The principal question to be decided is the one ruled upon by the trial court, viz., whether the plaintiff proved a case sufficient to be submitted to the jury. The utmost that can be claimed by the plaintiff, in view of his testimony, is that in January, 1909, before the enactment of the statute mentioned, the defendant requested him to induce the city to purchase the property. There is no testimony whatever tending to show that the plaintiff did anything in response to this request until July of that year. One party may request another to perform for him certain services, but no obligation or contract to pay for such services arises until they are performed. We must remember that the complaint is

76 Or.—6

laid on the allegation that the plaintiff, at the special instance of the defendant, performed work, labor and services for the defendant. This averment being traversed, it was incumbent upon the defendant to prove it by competent evidence. Under the statement of his complaint and his own testimony no engagement to pay for his labors came into existence until at least in July, 1909; for he himself says he did nothing until that time, and that was after the new law went into effect. To prove a contract for services of the kind declared upon and arising after the amendment was in force, the statute expressly says that:

"Evidence, therefore, of the agreement shall not be received other than the writing or secondary evidence of its contents in the cases prescribed by law."

In this respect our Code is more stringent than any other to which our attention has been directed. In mandatory language it forbids proof of any kind other than the writing, yet here the plaintiff would rely upon the oral testimony entirely unless we may except the newspaper article to which reference has been made. As already pointed out, that does not satisfy the statute because, for one thing, it does not express the consideration.

2. The plaintiff claims that he fully performed everything to be accomplished by him, and that this obviates the objection urged by the defendant under the statute. There is apparent contrariety of opinion among the precedents upon this question, but the rule is thus laid down by this court in *Sorenson* v. *Smith,* 65 Or. 78 (129 Pac. 757, 131 Pac. 1022, Ann. Cas. 1915A, 1127, 51 L. R. A. (N. S.) 612):

"When an enactment expressly declares that an agreement for the payment of a commission for secur-

ing a purchaser of land is void, unless it is in writing and signed by the owner of the real property, the rule is well established that, in the absence of a written contract, a full performance of the services by the broker does not take the case out of the statute of frauds''— citing *Myres* v. *Surryhne,* 67 Cal. 657 (8 Pac. 523); *Shanklin* v. *Hall,* 100 Cal. 26 (34 Pac. 636); *McGeary* v. *Satchwell,* 129 Cal. 389 (62 Pac. 58); *Dolan* v. *O'Toole,* 129 Cal. 488 (62 Pac. 92); *Beahler* v. *Clark,* 32 Ind. App. 222 (68 N. E. 613); *Price* v. *Walker,* 43 Ind. App. 519 (88 N. E. 78); *King* v. *Benson,* 22 Mont. 256 (56 Pac. 280); *Marshall* v. *Trerise,* 33 Mont. 28 (81 Pac. 400); *Blair* v. *Austin,* 71 Neb. 401 (98 N. W. 1040); *Rodenbrock* v. *Gress,* 74 Neb. 409 (104 N. W. 758); *Barney* v. *Lasbury,* 76 Neb. 701 (107 N. W. 989); *Gerard-Fillio Co.* v. *McNair,* 68 Wash. 321 (123 Pac. 462).

The same precept was reiterated in *Slotboom* v. *Simpson Lbr. Co.,* 67 Or. 516 (135 Pac. 889, 136 Pac. 641, Ann. Cas. 1915C, 339).

3. Again, it is taught in *York* v. *Nash,* 42 Or. 321 (71 Pac. 59), *Hardy* v. *Sheedy,* 58 Or. 195 (113 Pac. 1133), *Henry* v. *Harker,* 61 Or. 276 (118 Pac. 205, 122 Pac. 298), and in *Grindstaff* v. *Merchants' Investment & Trust Co.,* 61 Or. 310 (122 Pac. 46), that in the performance of a contract like the one upon which the plaintiff relies the broker must do one of two things before he can recover his commission from his employer; he must furnish his principal a binding contract executed by an intending purchaser who is able to buy and upon whom, if he fails to buy, the principal may have recourse, or the broker must, by some means, bring the buyer and seller together or into communication with each other so they may themselves make the contract and conclude the sale. If he falls short of this he fails in the performance of his contracts. His efforts are in vain. Conceding to the testimony of the

plaintiff its full value on this point, it shows nothing more than that he endeavored to induce the municipal authorities to take measures for the purchase of the property by the city; but whether it was his argument which brought about the final result, or that of Travers, or of the defendant himself, the record is silent. Upon that feature we are left to mere conjecture, for the plaintiff does not pretend that he had the exclusive right to negotiate a sale of the property. The essential element without which recovery cannot be had upon the *quantum meruit* is that the services counted upon were of some value to the principal for whom they were rendered: *West* v. *McDonald,* 64 Or. 203 (127 Pac. 784, 128 Pac. 818). Independent of the statute of frauds, therefore, if we could consider this under the head of reasonable worth, the testimony of the plaintiff falls short of showing that the defendant reaped any benefit from the services mentioned in the complaint. In default of his having exclusive authority to effect a sale, the mere transfer of the title does not prove that he accomplished that result. From every point of view the judgment of the court in granting a nonsuit was correct, and it is affirmed.

AFFIRMED. REHEARING DENIED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE MCBRIDE and MR. JUSTICE BENSON concur.