LOUIS A. GINSBURG *vs.* HARRY W. GODDARD.

Suffolk.  March 21, 1923. — April 12, 1923.

Present: RUGG, C.J., DE COURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Broker*, Commission. *Agency*, Evidence of relation.

The evidence at the trial of an action of contract by a broker against an owner of real estate for a commission alleged to have been earned in procuring a purchaser for the real estate, tended to show that the plaintiff was requested to procure a purchaser by a woman who was employed by the defendant to collect rents, pay taxes and take charge of the real estate and who was the only person authorized by the defendant to sell the property. There was no evidence that the defendant consented to or knew of the employment of the plaintiff. *Held,* that the woman had no authority express or implied to employ the plaintiff as a subagent for the defendant, and that the plaintiff could not recover.

CONTRACT, for a commission of $5,100 alleged to have been earned in procuring the sale of real estate owned by the defendant at 1082–1086 Commonwealth Avenue in Boston. Writ dated February 2, 1920.

In the Superior Court the action was tried before *White,* J. Material evidence is described in the opinion. At the close of the evidence by order of the judge, the jury returned a verdict for the defendant; and the plaintiff alleged exceptions, which, after the resignation of *White,* J., were allowed by *Hammond,* J.

The case was submitted on briefs.

*C. F. Eldredge,* for the plaintiff.

*S. Cohen,* for the defendant.

CARROLL, J.  The plaintiff, a real estate broker, in this action of contract sought to recover $5,100 on an account annexed; and on a second count to recover the same sum for commission or brokerage in the sale of property owned by the defendant. At the close of the evidence the judge ordered a verdict for the defendant, to which ruling the plaintiff excepted.

The defendant was the owner of the real estate in question. Miss Fitzsimmons, his agent, bought the property in 1915, and as such agent collected the rents, paid the taxes, "hired lawyers to get out tenants," and had charge of the property. In 1919

he authorized her to sell it. The defendant told her that he must receive $25,000 above the mortgage of $130,000. The real estate was sold that year to Rudnick and Baer, the title being taken in the name of one Foster, for the sum of $168,000. The defendant testified that he did not know that the purchase price was $168,000 until the trial of the action; that "it was immaterial to him what it was; that he got the price he told her he must get, namely $155,000," and did not know what happened to the $13,000; that Miss Fitzsimmons was the only one ever authorized by him to sell the property; that he gave her no authority to hire the plaintiff or anybody else, or to "bind him to pay a commission to another broker;" that he had never seen the plaintiff till he saw him in court; and that he allowed Miss Fitzsimmons as her commission on the sale all that she might receive above the sum of $155,000.

There was evidence that in July or August, 1919, Miss Fitzsimmons asked the plaintiff to secure a purchaser for the block; that he interviewed certain persons and reported to her what he had done "and finally found Mr. Edward Watchmaker," who was his "customer." Watchmaker testified that Miss Fitzsimmons asked him "how . . . [he] came to know about the property. . . . I told her I had obtained a statement from Mr. Edward Ginsburg through the plaintiff;" that he was not the buyer, that he was acting as the broker for Rudnick and Baer, "who finally bought the property."

The evidence discloses that the only person authorized by the defendant to sell the property was Miss Fitzsimmons. He gave her no power to delegate this authority and he did not know that the plaintiff was hired by her. The employment of the plaintiff by her was without the express or implied consent of the defendant, and her employment as the agent of the defendant to make the sale did not give her the implied power to hire the plaintiff as a subagent of the defendant. This could not be done without his consent. There was no evidence of any privity between the plaintiff and the defendant. "A delegated authority can be executed only by the person to whom it is given, for the confidence being personal, cannot be assigned to a stranger." *Brewster* v. *Hobart,* 15 Pick. 302, 307. *Barnard* v. *Coffin,* 141 Mass. 37, 41. *Sorenson* v. *Smith,* 65 Ore. 78. There was no custom

of the trade to employ subagents, and no necessity arising from the nature of the business. Even if the jury did not believe the testimony of the defendant that he never authorized Miss Fitzsimmons to hire the plaintiff or anybody else, there was no evidence that he consented to the employment of the plaintiff or knew of his employment as his agent, and the fact that Miss Fitzsimmons collected the rent, paid the taxes and had charge of the building, gave her no power to hire the plaintiff. She was authorized to sell the property, but not to hire others as the defendant's agents.

*Appleton Bank* v. *McGilvray*, 4 Gray, 518, is not applicable. In that case the note was delivered to a carrier "to collect it in the ordinary way;" and it was the custom to collect notes by depositing them in a bank, as well as by calling on the parties personally. It was held that the directions given by the defendant were equivalent to authority to collect the notes by either of the modes.

There was no evidence of ratification. The defendant had no knowledge that the plaintiff was in any way instrumental in procuring the sale, or that he acted as his agent. As the plaintiff was not the agent of the defendant, it becomes unnecessary to consider the question whether the plaintiff was the efficient cause of bringing about the sale of the property. There was no evidence of fraud. *Cohen* v. *Jackson*, 210 Mass. 328. *Barnard* v. *Coffin, supra.*

*Exceptions overruled.*