ROTT. et al, Respondents, v. WHITING et al, Appellants.

(224 N. W. 949.)

(File No. 6291. Opinion filed April 13, 1929.)

*James M. Brown,* of Aberdeen, for Appellants.

*D. M. Joyce,* of Aberdeen, for Respondents.

BROWN, J. Defendant May Whiting, residing in Chicago, owned a half section of land in Brown county, S. D., which she wanted to dispose of. Defendant Rasmussen was her brother, and he and plaintiffs resided in Aberdeen, S. D. Rasmussen, knowing his sister desired to dispose of her land, asked Neill if he could find a buyer, and in the course of conversation between them Neill said that Rott had some parties who wanted to trade city property for a farm, and, if Rasmussen would protect them with a commission, they would introduce to him these parties. In the course of the conversation about the commission, Neill testified that Rasmussen agreed to give a commission of $500 if any trade was accepted. Rott thereafter introduced to Rasmussen the owners of the city property, who went out to look at the farm, and later Mrs. Whiting came out to Brown county and made a deal whereby she traded the farm to those parties for city property. In regard to who was to pay the commission, Neill testified: "When the agreement was made with Rasmussen, Rott and I were looking to Mr. Rasmussen for our commission."

It is not claimed that either of the plaintiffs had any communication whatever with Mrs. Whiting, until some time after the contract for the exchange of property was executed. When Mrs. Whiting came to Aberdeen in 1923, she found the owners of the city property through an attorney who looked after her interests there, and the terms of the trade and the execution of the contract therefor were agreed upon by her without her having any knowledge of either of the plaintiffs having any connection with the proposed trade. Rasmussen testified that, so far as he knew, Rott had nothing whatever to do with the transaction; that he told Neill of his sister's desire to sell the land, and agreed with him that, if a deal was made, his sister should pay $500 for the services of him and Neill, and that they would divide the sum evenly; that he had sold Neill a car for $350 for which Neill had given him two notes, one for $241 and one for $104, and that, after the deal was made, he had settled with Neill for his share of the commission. Rott testified that, after the deeds to the property were exchanged, he and Neill had a conversation with Rasmussen relative to their commission, and that Rasmussen said he was going to make a loan on the city property and then would pay the commission; that he did not say his sister was going to make the loan, but that he was; that later he had another conversation with Rasmussen on the street about his pay, during which he got so mad that he offered to give Rasmussen a licking, but did not get any pay. Neill testified that in the fall of 1923, several months after the contract for the exchange was executed, but before the deeds were exchanged, he met Mrs. Whiting in Aberdeen and took her out in his car to see the land, and that on the way he told her that Rott had introduced the owner of the property to him and he had agreed to see that Rott got a commission, and her brother had agreed that she should pay Rott and Neill a commission of $500 at the time the exchange papers were executed, and that she replied that she would pay him or see that he was paid before she left for her home in Chicago. There is no evidence that up to the time of this alleged conversation Mrs. Whiting had any information whatever that either of the plaintiffs had anything to do with the transaction or that they had furnished any information as to who were the owners of the city property.

At the close of all the evidence, defendant Whiting moved that

the action be dismissed as to her, because there was no evidence that she had ever authorized Rasmussen to employ plaintiffs in any manner on her behalf and because it appeared from the undisputed evidence that she made the contract for the exchange of her property without having any notice or knowledge of any kind that either of the plaintiff had anything to . do with the transaction, which motion was denied. The same matter was presented in a requested instruction, and a further instruction requested by her to the effect that any promise by her to plaintiff Neill, if such was made as testified to by Neill, was without consideration and would not support a recovery. The court instructed the jury that, if they should find that defendant knowingly held Rasmussen out to the public as her agent, and that if she and Rasmussen had knowingly conducted themselves so as to reasonably justify the public generally and those dealing with them in believing that Rasmussen was her agent, then she would be bound by the actions of Rasmussen, to which instruction the defendant Whiting excepted. The jury returned a verdict for plaintiffs for $500 and interest against both defendants. A motion by defendant Whiting for judgment notwithstanding the verdict was denied, and from judgment on the verdict against her, and from the order denying her motion for judgment notwithstanding the verdict, she appeals.

■ ■ There was testimony to the effect that Rasmussen looked after Mrs. Whiting's share of the crop on the land in the season of 1923 and that he collected rents for the city property after she came into possession of that, but, other than this, there was not a vestige of proof that she had held out her brother to the public as her agent, and proof that one had authority to collect the rents of real estate is certainly no proof that he had any authority to sell such real estate. Topliff v. Shadwell, 64 Kan. 884, 67 P. 545; Ginsburg v. Goddard, 244 Mass. 481, 138 N.E. 840. This instruction excepted to was therefore erroneous, and, as said in Quale v. Hazel, 19 S. D. 483, 104 N. W. 215, it was improper to give it, as its tendency was to mislead the jury.

■ It is clear from the testimony of both of the plaintiffs that they were looking to Rasmussen for their commission, and were looking upon him and not upon Mrs. Whiting as their employer, and she is not liable to them for a commission, unless she made herself liable by the promise that Neill alleged she made to

him in the conversation on the way out to the farm, several months after the contract for the exchange of property had been executed. Her version of that conversation is that Neill asked her to intercede with her brother for the payment to him of a commission of $500, and that she declined to do so or to become liable for payment of any amount herself, saying she told him his deal, if any, was with her brother, and to him he must look for his pay. But, taking Neill's testimony as to this conversation, it is that he told Mrs. Whiting that he and Rott had procured the owner of the city property as a possible purchaser for her land, and that her brother had agreed that she should pay them a commission of $500 when the exchange papers were executed, and she replied that she would either pay him or see that he was paid before she left for her home in Chicago. She had not employed either of the plaintiffs; she had not authorized her brother to employ them; and she testified that she had not even authorized her brother to do anything in the way of finding a purchaser for her land. But, conceding that her brother had authority to find a purchaser, that did not authorize him to employ sub-agents at her expense. Simms v. St. John, 105 Ark. 680, 152 S. W. 284, 43 L. R. A. (N. S.) 796. While one employed to find a purchaser for real estate may do so through a subagent and thus both earn his own commission from his principal and render himself liable to the subagent he has employed for whatever compensation or commission he has agreed to pay his subagent, he cannot, without authority from the principal employ a subagent at such compensation as he chooses to name, and make the principal liable for the compensation or commission of the subagent. Simms v. St. John, supra; Ginsburg v. Goddard, supra.

 The alleged promise of Mrs. Whiting to pay, testified to by Neill, cannot be considered as a ratification of the employment of plaintiffs by Rasmussen on behalf of Mrs. Whiting. Several months before that time her contract with the owner of the city property had been executed and had become binding upon her; she could not repudiate that contract without incurring liability to the owner of the city property. It cannot, therefore, be said that she retained the benefits of a transaction induced by plaintiffs, with knowledge of their having been the inducing cause of such transaction. Her promise to pay, as testified to by Neill, was a

promise to pay the debt of her brother, and that promise, not being in writing or founded upon any consideration, is not sufficient to support an action on behalf of plaintiffs.

The judgment and order appealed from are reversed, with direction that the action be dismissed upon the merits as to the defendant May Whiting.

SHERWOOD, P. J., and POLLEY and CAMPBELL, JJ., concur.

BURCH, J., concurs in result.